# Harbin v. The State.

### Murder.

### (Decided June 30, 1916. 72 South. 594.)

1. **Appeal and Error; Assignment; Waiver.**—Where a single objection is assigned to a question propounded to a witness, all other objections are waived.

2. **Homicide; Evidence.**—Where it appeared that deceased received a bullet wound running diagonally down his cheek from behind, evidence that the mare which he was driving had a wound in her flank in line with the course of the bullet in deceased's cheek as he sat on the buggy seat, was admissible and pertinent to the theory that defendant, riding a horse, followed deceased for the purpose of killing him.

3. **Appeal and Error; Curing Error.**—Where testimony is admitted in the absence of a foundation for it, the error is cured by the subsequent introduction of the proper predicate.

4. **Homicide; Evidence.**—Where it was not shown that a certain person was present at the time of the homicide, it was proper to exclude statements of another witness that such person was very drunk at that time, such evidence being wholly irrelevant.

5. **Same.**—The fact that a witness went to defendant and asked him to drop the difficulty with deceased, and that defendant refused to do so, is admissible as tending to show enmity between them.

6. **Same.**—It was for the jury to interpret the statement imputed to defendant that he and deceased "would fix it between themselves sometime."

7. **Same.**—Testimony that about two years before the killing the defendant had asked the witness if deceased had gone up a certain road, and that defendant had a gun with him at the time, was admissible when viewed in the light of the subsequent killing of deceased with a gun.

8. **Same.**—Whether the inquiry of defendant, made two years prior to the killing as to whether deceased had gone up a certain road, the defendant

[Harbin v. The State.]

then being armed with a gun, was a threat, and the probative force of such testimony was for the jury.

9. **Evidence; Undisclosed Intention.**—A question addressed to a witness as to why he went into a certain shop, was objectionable as calling for the undisclosed intention of the witness, it was permissible to show what occurred therein, but was a question for the jury as to what the intentions of the parties were, to be inferred from the occurrences there.

10. **Witnesses; Examination; Review.**—The discretion of the court exercised in controlling the scope of a cross examination will not be reviewed unless abused.

APPEAL from Lauderdale Circuit Court.

Heard before Hon. C. P. ALMON.

Joe Harbin was convicted of murder in the second degree, and he appeals. Affirmed.

Some of the exceptions to evidence sufficiently appear. Over the objection of defendant Mrs. Hinton was allowed to state: "He never named Jerry Keeton, but said there was a man that would have to die some day, and that it might cause trouble, but he said he sure would have to die, and that he (Harbin) was wearing shoe in his neck now."

The witness Sharpe was permited to testify: "I went to Joe Harbin and asked him to drop the difficulty between him and Jerry Keeton. I told him it was bad to be in a racket, and for him to drop it and be friendly, and he said no he would not drop it."

Charlie Brewer was permitted to say that Harbin came to him in the woods while he was logging and asked him if he had seen Keeton go up that day, and he answered, "No, sir," and he was then permitted to answer the question, "Did he have a gun with him then?" and the witness answered, "Yes, sir; he did." Witness was further permitted to testify that Harbin said he heard Keeton had gone up the road with a drove of cattle, and that he might come back that way. The witness Wright, on cross-examination, was asked by the solicitor:

"Who did you tell that to here?" and "You don't know a single person in this house that you have told, not any one on these grounds, or in this house that you told that Keeton had made threats against Harbin?"

GEORGE P. JONES, and A. H. CARMICHEAL, for appellant. W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

BROWN, J.—The appellant was indicted jointly with his two brothers John and Nathan for the murder of Jerry Keeton, and, demanding a severance, was tried and convicted of murder in the second degree. The fact of the killing by appellant is not disputed, and the state's theory of the case—and there was abundant evidence tending to support it—is that Harbin and his brothers armed themselves and went to a blacksmith shop on the road leading from Waynesboro, Tenn., to Florence, Ala., knowing that the deceased was traveling along that road and would pass this shop in a short time after they stationed themselves there, and there lay in wait with the purpose to kill Keeton; that there was an opening on the side of the shop where these parties secreted themselves and through which they could observe the deceased as he approached; that just after Keeton passed the shop he was fired upon from behind, and, although mortally wounded, if not instantly killed, he retained his seat in the vehicle in which he was traveling; that deceased was accompanied by his nephew, a boy of 15 years of age, who was driving, and that defendant mounted his horse and followed down the road, and, when immediately behind the buggy, again fired upon deceased; and, although the whole top of his head was torn away and his brain scattered over his companion and the vehicle, he remained seated in the buggy until it was driven to his brother's, some distance from where he was shot.

The fact that a bullet wound was found on one of the mare's hind legs, the location of the wound, and the character of the bullet extracted from the wound on the mare, were all pertinent facts having some tendency to support the state's theory of the case.

(1-3) There was what the evidence tended to show a bullet wound on deceased's cheek ranging from the back toward the front and downward. The witness stated that the wound on the mare "was about where the big leader goes into her right leg." This was the mare drawing the buggy in which deceased was sitting when shot. The solicitor's question to the witness Bradley, eliciting testimony to the effect that the wound on the mare was in line with the range of the wound on deceased's face, was possibly subject to the objection that it called for a conclusion of the witness; but this objection was not urged, and by assigning other specific objections this objection was waived.— *Railroad Co. v. Bailey,* 112 Ala. 167, 20 South. 313; *Sharp v.*

[Harbin v. The State.]

*Hall*, 86 Ala. 110, 5 South. 497, 11 Am. St. Rep. 28. The fact elicited was certainly relevant and material to the issues, and the only other objection at all tenable was that it was not shown that the deceased was in the same position when the witness saw him as when he was shot. The evidence subsequently offered, both by the state and defendant, tended to show that deceased was seated in the buggy when he was shot, and that he was so seated when the witness first saw him after the shooting. So, if it was error to admit the testimony at the time, the error was cured by the testimony subsequently introduced, laying the proper predicate for the question.—*Allen v. State*, 134 Ala. 164, 32 South. 318; *Scott v. State*, 30 Ala. 503.

(4) The objection was properly sustained to the question asked the witness Bradley, "He was very drunk, wasn't he?" referring to Floyd Keeton. At this time young Keeton had not been examined, and no evidence had been offered showing that he was present when the killing occurred, and on the face of the evidence then in the case the testimony elicited by this question was wholly irrelevant to the case.

There was evidence tending to show a former difficulty between the defendant and deceased, and that "bad blood" existed between them, and, while the deceased was not specifically mentioned in the threat testified to by Mrs. Hinton, the evidence was sufficient to authorize the jury to infer that the threat had reference to the deceased.—*Knight v. State*, 160 Ala. 64, 49 South. 764; *Williams v. State*, 147 Ala. 10, 41 South. 992; Underhill, Crim. Evidence, § 328; *Pearce v. State*, 14 Ala. App. 120, 72 South. 213; *Rains v. State*, 88 Ala. 91, 7 South. 315; *Pulliam v. State*, 88 Ala. 1, 6 South. 839; *Anderson v. State*, 79 Ala. 5.

(5-6) The testimony given by Sharpe was admissible as tending to show enmity between the defendant and deceased, and it was for the jury, in the light of the other evidence, to interpret the statement imputed to the defendant by the witness "that they would fix it between themselves some time."

(7, 8) The circumstances testified to by Brewer tended to show that defendant, while armed, was inquiring as to the movements of the deceased; and, while his conduct, standing alone, might have little or no significance, when viewed in the light of subsequent occurrences and the other testimony, it tended to shed some light on the subsequent occurrence—the killing—and whether his conduct amounted to a threat and its probative force

[Haydon v. The State.]

were for the jury. The mere fact that it occurred two years before the killing did not justify the exclusion of the testimony.—*Rector v. State,* 11 Ala. App. 347, 66 South. 857; *Pulliam v. State, supra.*

(9, 10) The question to John Harbin, "What did you go in the shop for?" was objectionable as calling for the undisclosed intention of the witness.—*Fuller v. Whitlock,* 99 Ala. 411, 13 South. 80. It was permissible to show what occurred at the shop, and it was for the jury to infer from the acts and conduct of the parties as to their intentions.

"A wider latitude is allowable on the cross, than upon the direct, examination of a witness. It is permissible upon a cross-examination, for the purpose of testing the memory, sincerity, etc., of the witness, to interrogate him as to matters wholly irrelevant to the issues in the case. The latitude and extent of such cross-examination, however, is a matter that must, of necessity, rest largely, if not exclusively, within the sound discretion of the trial court, and so long as that discretion is not abused, the action of the trial court will not·be revised on appeal."—*Cox v. State,* 162 Ala. 66, 50 South. 398.

No such abuse is shown with reference to the cross-examination of the witness Wright by the solicitor in this case.

This disposes of all questions discussed by able counsel for appellant; and, while we have considered all others appearing on the record, we deem it unnecessary to treat them.

We find no error in the record, and the judgment of the circuit court is affirmed.

Affirmed.