142 So. 685

### MORRIS et al. v. STATE.
### 6 Div. 257.

Court of Appeals of Alabama.
June 14, 1932.

176

See, also, 24 Ala. App. 273, 134 So. 456.

J. Foy Guin, of Russellville, for appellants.

Thos. E. Knight, Jr., Atty. Gen., and Pennington & Tweedy, of Jasper, for the State.

SAMFORD, J.

The indictment charged murder in the first degree. When the defendants were arraigned for trial, the court entered an order to summon a special venire from the county of Winston, but limited in said order the drawing of the veniremen to the jury box containing names of qualified jurors in the Double Springs division of Winston county. The defendants objected to being tried by a jury so drawn, and moved to quash the venire on the ground that the order did not include jurors

from the entire county. By act of the Legislature 1919 (Loc. Acts 1919, p. 164), there is created a division of the circuit court of Winston county to be held at Haleyville in said county, the jurisdiction of which division is limited to causes arising in certain precincts named. Section 8 of said local act (page 165) provides for the drawing of grand and petit juries to serve in the Haleyville division from those certain precincts named and composing the division. While the jurisdiction of the circuit court at Double Springs is not specifically divested of jurisdiction over causes arising in the Haleyville division, a district for drawing grand and petit jurors to serve the Haleyville division of the court, section 8633 of the Code of 1923 exempts jurors in that district from service in the Double Springs branch of the court. This section does not affect the operation of the local law above referred to, but does limit the court at Double Springs to qualified jurors outside the Haleyville district and in Winston county. The objection of defendants to being tried by a jury so selected was properly overruled, as was also the motion to quash the venire.

One of the veniremen, upon being examined by the court as required by section 8659 of the Code of 1923, answered that he had a fixed opinion as to the guilt or innocence of the defendants that would bias his verdict. The court on this answer very properly and promptly discharged him as a juror. After this, the defendants' counsel sought to interrogate this venireman further, touching his qualifications, claiming this right under section 8662 of the Code of 1923. This section has no application in this case. This venireman had already been discharged from further service by the court, and further examination could not have changed this order.

The defendants moved for a continuance on account of the absence of M. G. Harris, a witness duly summoned, and offered a showing for this witness. The state declined to admit the showing, the court overruled defendants' motion for a continuance, and ordered an attachment for the witness. This is a matter discretionary with the court, and will not be reviewed, except in case of abuse. As a complete answer to the claim that the court abused his discretion, it appears from the record that on the hearing of the motion for a new trial the witness Harris was present and offered to testify, but defendants objected, and the court sustained the objection, although, if Harris had testified to the statement set out in the showing made for him as a basis for a continuance, such testimony would have been beneficial to defendants, whereas it was made known to the court that the testimony of Harris would not be the same as the statement contained in the showing. We do not say that this shows that defendants' counsel was trifling with the court, but we do say it is a complete demonstration of the fact that the court's discretion was wisely exercised.

The clothes of the dead man were properly admitted in evidence. The case of Boyette v. State, 215 Ala. 472, 110 So. 812, has been differentiated and explained in later decisions. Patterson v. State, 23 Ala. App. 428, 126 So. 420; Enzor v. State, 24 Ala. App. 346, 135 So. 595.

The witness Kilgore, having testified as to his experience and observations with reference to dead bodies, was qualified to testify that in his opinion Lea had been dead six hours or more when he examined the body. The case of Anderson v. State, 19 Ala. App. 606, 99 So. 778, is not in point. The testimony in that case was as to the cause of death. In the White Case, 136 Ala. 58, 34 So. 177, the witness was not shown to have had a special knowledge of the fact about which he was called to testify.

The testimony offered by defendant as to what Jack McDonald said to certain persons the day after the homicide and not in the presence of defendants or either of them was not a part of the res gestæ, and was properly excluded as being hearsay. A person accused of crime may show his own innocence by proof of the guilt of another. However, the evidence of such guilt must relate to the res gestæ, and not to the declarations or conduct of the party on whom it is attempted to cast suspicion, subsequent to, and having no immediate connection with, the crime. 1 Best on Ev. Par. 91; Levison v. State, 54 Ala. 520.

The witness Bruner was asked by the solicitor this question: "Do you know whether or not in February of this year Luke Lea owned a gun or not?" Objection to this question was overruled and exception reserved. One of the pertinent questions involved in this case was the ownership of the gun (pistol) found on the running board of Lea's car at the scene of the homicide. The question called for legal evidence. The answer was: "He did not, sir." This answer was not responsive to the question, and no motion was made to exclude. There is, therefore, no ruling here to review.

The witness Jasper Parker having testified that he saw the Luke Lea car on the night of and just prior to the homicide, and that he made certain observations regarding it, it was competent for him to testify that the next morning a car was pointed out to him in Jasper as the Luke Lea car, and that the car he saw the night before was in his judgment the same car. This was relevant as tending to identify the car.

After the witness Parker had testified on cross-examination that the Luke Lea car "was a big car * * * it was the biggest car; it was a medium size car. It was bigger than a Ford. It was a medium size car; it

aint one of the biggest, I said it was a medium size car," defendants' counsel asked this question: "Do you remember saying on the other trial it was a big car?" Objection to this question was sustained and exception reserved. Even if this witness had said on another trial that the Luke Lea car was a big car, such answer would not have tended to impeach his testimony. The word "big" is a descriptive adjective relative in its application here to a Ford coupé about which the witness was testifying, and such testimony was not in such conflict with the testimony then being given to be impeaching.

■ The witness Joe Spain testified to seeing two cars in the road in front of his house between 7 and 8 o'clock on the night of the murder headed towards Jasper and the place where the Luke Lea car was found in the ditch. Spain lived on the road and between Clear Creek bridge, where it is shown that the two cars stopped side by side, and Mrs. Lee's place, where the Luke Lea car was found. While the two cars are not specifically identified as being the cars of defendants and Luke Lea, the fact testified to is a circumstance from which the jury could legally draw the inference that the cars were the same and none other, and that their relative positions on the road had changed since leaving Bostic's Camp, where the Luke Lea car was behind the Ford. In cases of circumstantial evidence, the testimony takes a wide range, and any fact from which an inference may be drawn and relating to the crime charged is admissible in evidence. Lancaster v. State, 21 Ala. App. 140, 106 So. 609.

■ Over proper objections and exceptions, the state was allowed to prove that about 9 o'clock of the night of the homicide these defendants came into the Jackson Hotel in Jasper, registered as man and wife, signing the name Morrison and wife; that Bessie Wright did the registering; that, when pay for the room was demanded, Morris pulled out $1, and then went out of the room, when he produced another dollar; that both defendants occupied the same room, leaving a call for 6 a. m., at which time they left the hotel together. These facts were not a part of the res gestæ. There was nothing in them tending to show flight or the suppression of evidence, nor were there any declarations against interest. The only tendency of this evidence was to prove a continuation of the purpose of the parties when they left Russellville that morning, to wit, the indulgence in illicit intercourse, and its natural effect in this case was to prejudice the defendants in the minds of the jury. There is in this case not one scintilla of evidence tending to show flight from a consciousness of guilty connection with this homicide, nor any act tending to prove a consciousness of guilt in the absence of which the foregoing evidence was erroneously admitted. Montgomery v. State, 17 Ala. App. 469, 86 So. 132; Briley v. State, 21 Ala. App. 473, 109 So. 845. If the subsequent acts and declarations of a defendant tend to connect him with the crime, they are admissible, but, in order to be admissible, such subsequent acts and declarations must tend to prove guilt or facts from which guilt could be inferred.

■ While witnesses were being examined who testified to the defendant Morris' good character, the solicitor, over timely objections, was allowed to ask witnesses on cross-examination, "You have heard about that liquor escapade over yonder too haven't you?" and "Mr. Quillan, were you his attorney over at Hamilton when they condemned and sold his car for having whiskey in the car?" These questions assumed as facts matters not relevant to any issues in this case, and brought to the minds of the jury acts of the defendant not admissible as tending to prove general bad character, or the defendant's character for truth and veracity. Vol. 28, Alabama and Southern Digest, 399, ☞237 (1). The violation of a statute not involving moral turpitude does not affect the defendant's general character. Mays v. State, 218 Ala. 656, 120 So. 163.

■ On cross-examination of witnesses who testify to the character of a defendant, it is permissible for opposing counsel to ask if they had not heard of certain things regarding defendant's standing in the community—not for the purpose of injecting proof of such things in evidence, but to ascertain the witness' estimate of character. Such examination, however, may be easily abused, and should be carefully guarded by the trial judge. Even a slight overstepping of the rule may result in great prejudice to a defendant on trial. Kelly v. State, 17 Ala. App. 577, 88 So. 180; Jimmerson v. State, 17 Ala. App. 552, 86 So. 153; Gray v. State, 21 Ala. App. 409, 108 So. 658; Bedingfield v. State, 24 Ala. App. 398, 135 So. 656.

■ Tom Steele, a witness for the state, testified that on the night of the homicide, between 7 and 8 o'clock, he passed over the concrete bridge over Clear creek, and that stopped on the bridge was a large car and a Ford coupé; that the Ford coupé was in front; that the defendant Morris was in the Ford car; and that the defendant Wright was standing on the bridge with one foot on the running board. The defendant in rebuttal of this asked defendant's witness Jacobs: "In your judgment if a Ford car were standing on that bridge and a man was sitting on the right hand side of the Ford and a person passed there on the left hand side walking, would it have been possible on that night to have told who the man was on the right hand side of the car?" This question called for the conclusion of the witness on a fact to be determined by the jury from all the facts and circumstances

surrounding the parties at the time. There are some cases, and some of them have been cited in appellant's brief, where, under certain circumstances, a witness, shown to be familiar with the surroundings, can testify as a collective fact whether a normal person could see or hear, but the instant case does not present such a condition.

At the conclusion of the state's testimony, the defendants moved the court to exclude the evidence, and before the jury retired requested in writing the general affirmative charge as to each defendant.

To these questions this court has given most earnest and careful consideration. As the cause must be reversed for retrial, for obvious reasons we do not enter into a detailed discussion of the evidence. Much of it is vague and indefinite, and many of the proven circumstances standing alone are consistent with innocence, but, when taken and considered as a whole, we think a case is made for the jury, upon whose shoulders rests the responsibility of finding a true verdict. The trial judge took that view of the evidence, and, under the authority of a long line of decisions in this state which require us to indulge every presumption in favor of the rulings of the lower court, we hold that the trial judge did not err in overruling the motion to exclude the evidence and refusing the general charge as requested by defendants. We reach the above conclusion in full appreciation of and concurrence in the opinion in the case of Ex parte Acree, 63 Ala. 234, which this court has followed in numerous adjudicated cases.

Other questions presented will probably not arise on another trial, and for that reason are not passed upon.

The judgment as to both defendants is reversed, and the cause is remanded.

Reversed and remanded.