154 So. 526

## PIERCE v. STATE.

### 6 Div. 571.

Supreme Court of Alabama.
April 26, 1934.

Harwood & McQueen, of Tuscaloosa, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

**BROWN, Justice.**

The appellant was indicted, tried, and convicted of murder in the first degree. The evidence is without dispute that he killed Tom Grace by shooting him with a pistol, and the evidence adduced by the state goes to show that appellant undertook to provoke difficulty with said Grace by assaulting him with an iron pipe; that Grace seized the pipe, and either wrenched it from the hands of appellant or held on to the end thereof to prevent the appellant from assaulting him, and thereupon the appellant drew the pistol, which he had concealed on his person, and shot and killed Grace. There was also evidence going to show that the killing was premeditated.

Appellant offered evidence of his general good character, and his testimony was to the effect that he went to where Grace was loading lumber on a truck for the purpose of getting from him lumber in payment of a debt of $3.52; that he carried the pipe along in his truck to use as a measuring stick, to measure the lumber, and, after Grace had refused to let him have the lumber on the debt, he went to his truck, got the pipe, and started around between the truck and the lumber, when Grace wrenched the pipe out of his hands, and, with the pipe grasped in both hands, Grace drew back over his head, with a threat that he would "bust out" appellant's brains, and at this juncture appellant drew the pistol and shot Grace. The evidence further goes to show that he habitually carried said pistol.

■ Appellant's first contention is that the court erred to his prejudice in "excluding testimony that there had been hold-ups and robberies of filling stations and garages in the vicinity of the place where the defendant operated a filling station and garage."

Appellant testified: "I had the pistol in my overall pocket, and I had put it in my pocket before I left home that morning to Griffin's sawmill. When I left the house to go to the store I put the pistol in my pocket. In fact I carried it in my pocket all the time every day. I operate a filling station, garage and store. Thereupon, counsel for the defendant asked the defendant the following question: Q. Has there been any hold-ups, any robberies of filling stations up there in the community? The State objected to this question, and counsel for the defendant then asked the witness the following question: Q. How long had you been carrying that pistol around your filling station? A. Been carrying it about a couple of months. I expect longer than that. Counsel for the defendant then asked the witness the following question: Q. Had any one warned you about being armed at your filling station? A. Nephew of mine. The Solicitor objected, and the Court stated: 'He can prove any threats.' Mr. Harwood: 'Just want to prove that his nephew had given him a pistol on account of the recent robberies of filling stations.' The Solicitor asked the Court to instruct the jury that it is not before them. Court: 'You asked if anybody had warned him of filling stations being robbed?' Judge Harwood: 'Yes, sir; and his nephew gave him a pistol and told him he ought to be armed around the filling station and he had been carrying it ever since he gave him the pistol.' Court: 'If he heard any threat made against him.' Judge Harwood: 'There had been a robbery in that neighborhood.' Court: 'He had a right to have a pistol at his filling station.' Thereupon, counsel for the defendant duly and legally excepted to the Court's refusal to allow the defendant to testify that there had been robberies of filling stations in the community where this defendant was operating a filling station."

Regardless of whether evidence of such robberies was admissible or not, the recitals of the bill of exceptions clearly do not sustain the exception.

■ It was permissible for the solicitor, on cross-examination of the witness Zeke Parsons offered by defendant, and who had testified that he knew the defendant's "general reputation" in the community in which he lived, and that it was good, to ask said witness if he had not heard that defendant had shot a person up "near Abernant or near Yolande." This testimony was admissible, not to show that defendant was a man of bad character, but to shed light on the weight and credibility of the testimony of the character witness. Ragland v. State, 178 Ala. 59, 59 So. 637; Hussey v. State, 87 Ala. 121, 6 So. 420; Bullington v. State, 13 Ala. App. 61, 69 So. 319; Mitchell v. State, 14 Ala. App. 46, 70 So. 991; Hill v. State, 194 Ala. 11, 69 So. 941, 2 A. L. R. 509; Hill v. State, 210 Ala. 221, 97 So. 639; State v. Shull, 131 Or. 224, 282 P. 237, 71 A. L. R. p. 1501, note 1543.

■ After the defendant had offered evidence of his general good character, it was permissible for the state to show in rebuttal that his general character prior to the killing

for which he was on trial for peace and quiet was bad. Ragland v. State, supra; Mitchell v. State, supra; Griffith v. State, 90 Ala. 583, 8 So. 812.

The other questions presented on the record have been examined, and, finding no error in the record and proceedings, the judgment of conviction must be, and is, affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.