4 So.2d 305
### ALABAMA GREAT SOUTHERN R. CO. v. MOUNDVILLE MOTOR CO.
#### 6 Div. 883.

Supreme Court of Alabama.
Oct. 16, 1941.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

DeGraffenried & McDuffie, of Tuscaloosa, for appellee.

**BOULDIN, Justice.**

The action was for damages to plaintiff's automobile resulting from a collision with defendant's locomotive at a grade crossing in the City of Tuscaloosa.

██ The driver of the automobile at the time was on a mission of his own. The car had been loaned, or, at any rate, turned over to him for temporary use while awaiting the arrival of a new car ordered for him by plaintiff company. No question, therefore, of contributory negligence under the doctrine of respondeat superior arises in the case.

██ If negligence on the part of the engineer operating the locomotive was a proximate cause of the collision, defendant was liable. This is true, whether such negligence was the sole proximate cause, or was a concurring proximate cause with negligence of the driver of the automobile. If defendant's engineer was free from all negligence proximately causing the collision defendant was not liable, as of course. This would follow, as of course, if the negligence of the driver was the sole proximate cause.

Appellant's main insistence is that the verdict for plaintiff should have been set aside on motion for new trial because opposed to the great weight of the evidence, and, therefore, palpably and plainly wrong and unjust. It is further insisted defendant was due the affirmative charge, as requested.

Defendant's train was known as a Diesel Electric, a small passenger train of three cars, including the baggage car which also housed the engine and motor supplying the motive power.

The collision occurred at the crossing of 10th Avenue. The automobile was moving south on this avenue. The train approached from the west. There were three railroad tracks at this crossing. The train was moving on the main track, the central track. The automobile had entered upon this track. The impact was on the side and forward part of the automobile, extending back to the front door.

The testimony of Mr. Bolton, the driver of the automobile, was to this effect: He approached these tracks at a moderate speed of 15 to 20 miles per hour. He stopped, looked and listened at a point near enough to the tracks to have a clear view to the right; not seeing or hearing an approaching train, he started up slowly, and did not know of the presence of the train until a moment before the collision. Plaintiff's evidence tends to show the speed of the train was 35 to 40 miles per hour.

The engineer's testimony was to this effect:

██ The train was moving at a speed of 15 to 20 miles per hour. The whistle was blown at intervals, and the bell was continuously ringing until the collision occurred. Keeping a lookout he saw the automobile approaching the crossing when he was some 160 to 200 feet from the crossing, and kept a continuous observation

of its movement. It was moving some 18 to 20 miles per hour, did not stop, nor slack its speed, but continued right onto the crossing, passing out of sight just before the crash. He did not slow down the train until the collision occurred. So far as appears, he gave no warning signal by blowing the whistle as the automobile was entering upon the tracks. Other evidence corroborates the engineer touching the speed of the train, also touching the stopping of the automobile before proceeding on the track. The evidence is in direct conflict on this point, presenting a clear issue for the jury. If the driver did stop at or about the usual point for looking and listening, and if the engineer saw this, then an issue of negligence after discovery of peril was presented for the jury on this phase of the case. The unusual situation of stopping apparently to look and listen, then starting up for the crossing when a train is bearing down in dangerous proximity, naturally suggests imminent danger. If the train was moving at the speed claimed by the engineer, he testifies it could be brought to a stop within some 25 feet.

As often held, an automobile approaching a railroad crossing at a safe distance cannot be said to be in a position of peril. The trainmen may assume the driver will observe the duty to stop, look and listen, and bring his car to a stop short of danger.

But, if the engineer, who is under duty to keep a lookout, sees that the driver does not stop, look and listen, but proceeds at same speed, apparently heedless of rapidly approaching peril, it cannot be said as matter of law no duty arises to resort to available preventive measures on the part of the engineer.

If a vigilant man, of reasonable foresight, perceives peril in the situation, a duty of instant action springs up, if any action known to skilful engineers is then available to avert disaster. A sharp warning signal may be a first, and possibly the only preventive measure available, dependent on the circumstances of the particular case. This court has frequently dealt with similar cases. The negligence of the engineer as a proximate cause of the injury is usually a jury question. So it is in this case. Thompson & Donohoo v. Mobile & O. R. Co., 211 Ala. 646, 101 So. 441; Southern R. Co. v. Sherrill, 232 Ala. 184, 167 So. 731; Johnson v. Louisville & N. R. Co., 227 Ala. 103, 148 So. 822; Central of Georgia R. Co. v. Bates, 225 Ala. 519, 144 So. 9; Alabama Great Southern R. Co. v. Sanders, 203 Ala. 57, 82 So. 17.

If the train was moving at excessive speed for that time and place, say approximately twice as fast as the ordinary speed, such fact may afford an inference of negligence as a proximate cause; and consequent liability where no question of contributory negligence is involved.

The affirmative charge was properly refused to defendant; and the state of the evidence does not call for a disregard of the presumption in favor of the verdict, with the added presumption in favor of the ruling of the trial judge.

An objection to the qualification of a witness to testify as an expert should be directed to that question. A general objection to a question on the ground that the evidence called for is "incompetent and immaterial" does not suffice.

Charge "B" given for plaintiff, set out in 7th assignment of error, placing the burden on defendant to show absence of negligence, is substantially in the terms of the statute. Code of 1923, § 9955, Code of 1940, Tit. 48, § 173.

The criticism of the charge is directed to the omission of proximate cause, as an essential attribute of actionable negligence. The statute omits such recital, but it is implied. To "show * * * that there was no negligence on the part of the company or its agents," requires no more than to show no negligence proximately causing the injury.

A charge omitting such causal relation may be misleading. However, given charges quite fully covered this point, and we cannot say the giving of this charge was error to reverse.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.