22 So.2d 538

## OSBORN v. STATE.

### 7 Div. 761.

Court of Appeals of Alabama.

March 27, 1945.

Rehearing Denied May 8, 1945.

J. B. Sanford, of Talladega, and Handy Ellis, of Columbiana, for appellant.

Wm. N. · McQueen, Acting Atty. Gen., and Forman Smith, Asst. Atty. Gen., for the State.

RICE, Judge.

This case was tried and determined in the circuit court of Talladega County on January 17th 1943. And on the date—January 20th, 1943—of the sentence imposed in response to the judgment rendered on January 17th, 1943, appellant gave notice of an appeal to this court.

Motion for a new trial was duly filed, and overruled on April 9th, 1943. Appeal bond was filed—and appellant released thereon —on April 30th, 1943.

In due course—the appeal being in all respects governed by the law as it existed prior to September 1st, 1943, the effective date of the Act of July 12th, 1943, abolishing bills of exceptions (Gen.Acts 1943, p. 423—Title ·7, Section 827(1), Cumulative Pocket Part, Code 1940),—appellant prepared, presented, and had signed a bill of exceptions; and, likewise in due course, doubtless the appeal would have been submitted to this court in the reasonably prescribed time contemplated by the law that governed.

But appellant's able and distinguished counsel, led by the potent Lieutenant Governor of this State, conceived that the appeal might be governed by the law as made by this act of July 12th, 1943—effective September 1st, 1943—abolishing bills of exceptions. And they asked, and procured, a delay sufficient to enable them to submit the appeal under the provisions of this said act. As a consequence—the Court Reporter's transcript of the testimony not being filed until and before September 25th, 1944—the appeal was not submitted in this court until January 11th, 1945.

The exceedingly voluminous nature of the transcript leads us to believe that the Court Reporter is perhaps not to be censured. In fact, just who should be censured is not readily apparent.

But certainly we regard it as unfortunate, and highly detrimental to the administration of justice, that a case tried in January, 1943, and appealed, is not submitted in this court before January, 1945.

True, when the provisions of the above-cited act of July 12th, 1943, abolishing bills of exceptions, are better understood—or repealed—we may not expect a repetition of the unseemly delay that is here appar-

ent. And, really, to us it seems clear—and we so hold and will act—that the instant appeal is governed by the law as it existed prior to, and independently of, the above-cited act of July 12th, 1943 (effective September 1st, 1943) abolishing bills of exceptions.

But in view of the confusion that has ensued following the enactment of this law abolishing bills of exceptions—as shown by the several decisions of our Supreme Court, and of this court, undertaking to construe same; and by the effort of our Supreme Court to clarify its terms by the promulgation on June 28th, 1944, of Supreme Court Rule 48, Code 1940, Tit. 7 Appendix (245 Ala. p. XXI), we, as. indicated above, do not feel certain as to just who—if anybody —should be here held up to censure.

■ So we will proceed to consider the appeal—as indicated above, disregarding the transcript of the testimony filed in conformance with the act abolishing bills of exceptions; and using, as the basis of our remarks, the bill of exceptions hereinabove mentioned as likewise being filed in the cause. '

Appellant was convicted of the offense of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for the term of *nine years* and *eleven months*.

It was shown without dispute that he shot with a pistol and killed, at the same time, but not with the same shot, two policemen of the town of Childersburg, Alabama: one *Albert DeLoach* and one *Austin Hammett*. He was indicted for murder in the first degree, separately, for the killing of each of the two men.

The present appeal is concerned, only, with his killing of *Austin Hammett*.

Without pretending to make a detailed narration of the testimony, it may serve for clarity for us to here remark that DeLoach and Hammett, being on night duty, went into the cafe or restaurant owned and operated by appellant—and, incidentally, open for business continuously, day and night,— shortly before five o'clock, on a morning in the latter part of December, 1942.

While we believe, in view of the occupation in which they were engaged, it should not be said that they were trespassers, yet the legality of their mission in said cafe or restaurant is not at once apparent. Plainly they did not go in as customers; and, there being no disorder of any kind in progress there upon the occasion, it is not without question that they had no business at all therein.

However, the above may be, it seems they accosted there a girl—a customer—by the name of Mary—telling her in substance that if she did not leave town "they would pick her up"—officer DeLoach doing the talking, and meaning, as is apparent, he would arrest her. Officer Hammett merely stood by, doing nothing, while DeLoach was telling Mary the things just mentioned.

Appellant, at first busy on the opposite side of the room, came over to where Mary was sitting, with DeLoach talking to her, and either did or did not interpose some remarks. He then returned to the place from whence he came—behind a counter running along the side of the room—with officer DeLoach—and Hammett—though Hammett was behind DeLoach, following him.

It seems without dispute that DeLoach, "shaking his finger" in a threatening way toward appellant, told appellant, who was by this time on the opposite side of said counter facing DeLoach, something to the effect that "if he said one more word he would have to put him under bond."

From this point on the testimony is in hopeless conflict. That for the State was to the effect that, without more ado, appellant took his pistol from a shelf underneath the counter, and began shooting; pointing his gun at first directly at DeLoach, and them immediately at Hammett, who was then running toward the front door of the restaurant, where he went out on the street, and after going some 75 feet fell dead, shot in the back, and without ever having fired his own pistol at all.

DeLoach fell, mortally wounded, almost. in the tracks where he stood at the moment appellant began firing. He died shortly thereafter.

Appellant's testimony was to the effect that DeLoach told him he would kill him; and that DeLoach brought his pistol up into shooting position, *whereupon* appellant procured his pistol as aforesaid and fired all the shots which he did fire directly at DeLoach; and that he fired no shot at all at Hammett.

■ None but a jury could unravel the conflicting testimony, and say just what did happen.

It is without dispute that the only pistol fired during the melee—to call it that— was the one fired by appellant.

It is without dispute that Hammett, who fell dead immediately on reaching the street where he fled while the shooting was in progress, was killed by a wound inflicted by a pistol shot in the back.

While appellant testified he did not "intentionally shoot Mr. Hammett," yet he said that while he was firing at DeLoach— some four or five shots—Hammett, running to escape from the building, went between appellant and DeLoach, and circled in such a way that he could easily have been struck in the back by one of the shots. Hence our statement earlier in this opinion, with reference to appellant: "It was shown without dispute that he shot with a pistol and killed, at the same time, but not with the same shot, two policemen of the town of Childersburg, Alabama; one *Albert De-Loach,* and one *Austin Hammett."*

As appears, appellant relied, in the instant prosecution, on a sort of bifurcated defense: (1) that he simply did not shoot and kill Austin Hammett at all; and (2) that if he did shoot and kill him his act was done in self-defense—as that term was fully explained to the jury.

As for the first of the prongs of his defense above, as will by now have appeared, the physical facts taken in connection with the testimony, foreclose him; and the two excerpts from the oral charge of the court complained of in appellant's brief—which will be set out in the report of the case— were given to the jury without error.

 It being without dispute that Hammett, throughout the time covered between his entering the restaurant and his running out the door and falling dead, did nothing more than "be along with De-Loach," it is apparent that appellant—even if he did not, as at least one of the witnesses said, fire directly and intentionally at Hammett as he fled the building—must have had his guilt vel non measured by the law as so aptly given to the jury in the trial court's able and comprehensive oral charge, to-wit:

"Under the evidence in this case the defendant was in his own place of business, and, therefore, would not have to retreat. There is a contention on the part of the defendant, as I understand the argument, that he did not intentionally kill Mr. Hammett, the man alleged to have been killed in the indictment and the man that he is charged with unlawfully and with malice aforethought killing. It is their theory, as I understand the argument, that he was being assaulted or threatened to be assaulted by Mr. Deloach, and in his effort to protect himself against that assault on the principle of self-defense he unwillingly (sic) and accidentally and without intention shot Mr. Hammett. He is not being charged in this indictment with killing Mr. Deloach; he is being charged in this indictment with killing Mr. Hammett, but if he was acting in self-defense, as I have explained to you, as against the approach or the assault of Mr. Deloach and while thus acting he accidentally and unwillingly (sic) and unintentionally and unknowingly killed Mr. Hammett, then that would be a defense to the charge of killing Mr. Hammett. Now, that is a question, gentlemen, for you to decide from the evidence in the case. If he killed Mr. Hammett and he was not acting in self-defense against either Mr. Hammett or Mr. Deloach, then, of course, that question would not arise, but if he was acting in self-defense, and, therefore, was not engaged in an unlawful act as against Mr. Deloach and unintentionally and unwillingly (sic) and unknowingly killed Mr. Hammett, then that would be a defense."

The issue thus defined was submitted to the jury, with the result mentioned hereinabove.

The evidence, as we have said, was highly conflicting.

We have examined every exception apparent—reserved or presumed. Much patience and skill on the part of the learned trial judge is evident throughout the record. A careful, comprehensive, and, we think and hold, correct oral charge—covering when transcribed, some eleven pages of the transcript paper—was delivered to the jury trying the case. More than fifty seven written charges requested by appellant— themselves covering when transcribed some eleven and one-half pages of the transcript paper—were given to the jury. A manifest and meticulous effort was made by the court to see that appellant's every right was scrupulously safeguarded.

We have no hesitancy in stating, after a painstaking study of the record, including the bill of exceptions, before us, that no prejudicially erroneous ruling or action of the trial court is anywhere apparent, unless it be in connection with the single matter which we will now proceed to discuss, viz: One *H. C. Bominy* being called as a witness in rebuttal for appellant, testified ·that he had known appellant for some ten or

twelve years; knew his general reputation, and that it was good. On cross-examination the State propounded to him the following question: "Have you heard that he had the reputation of being a bootlegger?" After appellant's due and proper objection to this question was overruled—with exception reserved—the witness answered: "Yes, sir." Appellant's motion to exclude this answer was likewise overruled, and exception reserved.

This witness *Bominy* was likewise further asked by the State: "And you have heard on numerous occasions of his violating the liquor laws of the city." Appellant's due and proper objection to this question being overruled—with exception reserved—the witness answered: "I have heard of it two or three times." Appellant's motion to exclude this answer was overruled, and exception reserved.

As a further illustration, this witness *Bominy* was asked by the State: "You had heard that he had been convicted of selling whiskey, hadn't you?" Appellant's objection to this question was overruled, and exception reserved. And the witness answering: "Yes sir," motion to exclude his answer was likewise overruled, with exception reserved.

■ While there is more of like nature in the record, what we have set out in some detail will illustrate, we believe, the question we have posed: May a witness who has testified that appellant bore a good reputation be asked on cross-examination whether or not he had heard that appellant had the "reputation of being a bootlegger;" or heard, on numerous occasions, of his "violating the liquor laws of the city;" or heard of his "being convicted of selling whiskey."

■■ We think the question should be answered—and we so answer it—in the affirmative. And we so answer it because of these considerations: (1) Our Supreme Court in Pierce v. State, 228 Ala. 545, 154 So. 526, 527, said: "It was permissible for the solicitor, on cross-examination of the witness *Zeke Parsons* offered by defendant, and who had testified that he knew the defendant's 'general reputation' in the community in which he lived, and that it was good, to ask said witness if he had not heard that defendant had shot a person up 'near Abernant or near Yolande.' *This testimony was admissible, not to show that defendant was a man of bad character, but*

*to shed light on the weight and credibility of the testimony of the character witness."* (Italics ours). And (2) because our Supreme Court in its opinion in Vaughan v. State, 201 Ala. 472, 78 So. 378, 381, said: "Upon cross-examination there is allowed great latitude. The defendant introduced a number of witnesses who testified to the good character of defendant and his father; the latter having also testified in the cause. Upon cross-examination of these witnesses the state was permitted to ask if they had not heard of the defendant and his father being drunk and gambling with cards. We are of the opinion that in this there was no reversible error. *(Testimony that they had so heard of defendant and his father is permissible on cross-examination not as evidence affecting the character of the defendant, but as evidence affecting the credibility of the witness as testifying to good character)."* (Italics supplied by us.) And (3) because the limit to which character witness can be cross-examined is largely in discretion of trial court. Snead v. State 243 Ala. 23, 8 So.2d 269. And (4) because, as regards the principle involved, we can see no distinction between the situation presented here, and that subsisting in the case where the utterance was made; so that the language quoted,—especially that that *we* have italicized—of our Supreme Court in its opinion in the case of Lowman v. State, 161 Ala. 47, 50 So. 43, 44, viz: "The defendant having * * * brought forward a witness who testified to his good character for truth and veracity, the state, on cross-examination, asked the witness whether he had heard that the defendant had been accused of selling liquor. On cross-examination an impeaching witness can be questioned as to what he had heard of acts or conduct likely to affect the character and reputation of the witness impeached, for the purpose of testing the source, extent, and soundness of his knowledge of general character. * * * *Repeated violations of statute law will doubtless affect general character, which, when made the subject of proof in courts of justice, means the estimate in which one is held by the community, although the thing done may not be of positive moral quality in itself, and inoffensive in the absence of statute",* confirms us in our conclusion.

Finding nowhere an erroneous ruling or action of the trial court, infected with er-

ror prejudicial to appellant's rights, the judgment appealed from must be affirmed.

And it is so ordered.

Affirmed.

CARR, J., not sitting.