82 So.2d 565

## Grover HARBIN

v.

## STATE.

8 Div. 398.

Court of Appeals of Alabama.
March 29, 1955.

Rehearing Denied Aug. 9, 1955.

Smith, Johnston & Butler, Huntsville, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

The appellant was indicted for the offense of murder in the first degree. The trial resulted in his conviction for manslaughter in the first degree and an imposition of ten years punishment in the state penitentiary.

The pertinent facts are accurately stated in the brief of appellant's counsel. We will copy this delineation:

"The State's testimony on the case in chief tended to show that on the 20th day of December, 1952, the Defendant, accompanied by Eva Mae Cagle, went to the Cedar Gap Barbecue Restaurant located about five (5) miles East of Huntsville, Alabama. When they arrived there, the dance hall adjoining the restaurant was occupied by a large number of guests. The Defendant and his companion soon met some parties who were known to them, and occupied a booth in the dance hall along with these acquaintances and some other parties unknown to them.

"After the Defendant had been in the dance hall for some hour or so, he, Eva Mae Cagle, Paul Bates and Shirley Adkins went outside to the back of the restaurant and dance hall where the toilet facilities were located. The two girls journeyed on ahead of the Defendant and Paul Bates going in the direction of the ladies rest room. In the course of this journey, two young men who were unknown to the Defendant and his companion, made some remark ostensibly directed to the two young women. According to Eva Mae Cagle, this remark was in substance as follows: 'Where do you girls live?'

"The two young women went on to the rest room and a short time thereafter reentered the back yard of the Cedar Gap premises, and crossed the yard to an automobile parked therein and occupied at the time by one Sgt. Edward L. Osborne and Erma Daughtry. It appears that as the girls were going to this parked automobile, the two unknown men made some further remark in their direction. About this time, and as the Defendant was crossing the back yard in the direction of the automobile to which the young women had gone, one of these young men struck at the Defendant with his fist. The Defendant warded off this blow and about this time Edward Osborne passed between the Defendant, and the man who had struck at the Defendant, and asked them not to have any trouble. The boy who had struck the blow then backed up and put his hand in his pocket, and shortly thereafter the Defendant and the other man came together.

"The testimony as to what transpired thereafter is somewhat conflicting. Several witnesses testified that at or about this time they were present in the back yard of Cedar Gap and saw anywhere from three to ten or more people involved in a general free for all. According to the Defendant, as one of the men attacked him from the front someone else grabbed him in a strangled hold from the rear, and these two and possibly others proceeded to strangle and beat upon him. He states that all of his activities to this point were directed toward extricating from the attackers— that he did not have a knife and·did not cut anyone. He states that he finally succeeded in freeing himself from his attackers who then disappeared into the darkness beyond the lights reaching out from the back of Cedar Gap, and he rushed inside into the dance hall. He then noticed that there was some blood on his shirt, and asked Paul Bates, who was then in the dance hall, to borrow the white shirt which Bates was wearing on top of a T-shirt. This exchange was made, and the Defendant then requested Bates to loan him his knife, which the Defendant states he asked for in order to protect himself from any further attack which might be made upon him as he prepared to leave Cedar Gap. This was the knife in possession of the Defendant at the time of his arrest and which was introduced into evidence by the State."

The pocketknife which was found in the possession of the accused was examined by Mr. Sowell, an assistant state toxicologist. He testified that in his opinion the knife had been washed since it had been used.

254

Insistence is made that this was error. The matter appears in the record in this fashion:

The witness was asked: "Were you able to say whether or not the blades of the knife appeared to have been washed?" Over objections he stated: "I did notice it, yes, sir." "Q. Were you able to form an opinion as to whether or not the blade had been washed, say, since it had been used?" Over objections he replied: "I did, yes, sir." The witness was then asked: "Will you state, please, your opinion on that?" Without objections he answered: "It is my opinion that this knife had been washed." "Q. Since used or not, or since being carried around?" Objections were overruled and the witness replied: "Since being carried around or used either one—you couldn't tell whether it had been carried around an hour or so after it had been used or not."

■ It is to be noted that the first group of questions to which objections were timely interposed were only preliminary in nature. There were no objections to the question which did call for a specific reply as to whether or not the knife had been recently washed. We entertain the view that to invite review of the matter relating to the competency of the witness to testify as an expert this should have been done.

■ The answer to the last question set out above was not harmful to the appellant. Murray v. State, 17 Ala.App. 253, 84 So. 393; Johnson v. State, 260 Ala. 276, 69 So.2d 854.

Basil Denny, the deceased, and one Morton left the place of the homicide some time prior to the cutting and journeyed in a truck a distance of about two or three miles. At this point the decedent gave Denny some money. While testifying the latter was asked this question: "Now I want to ask you whether or not at that time, the time Buddy gave you the money, he said: 'Here, you had better take this money and go back to Guntersville. You may get killed tonight?' "

■ The court sustained the State's objection to this question. We are unable to see the materiality of this inquiry. It was not a part of the res gestae.

■ After proof tending to support a claim of self defense, it is competent for the defendant to show that prior to the assault the deceased or assaulted party made threats or statements evidencing great hostility toward the defendant. Robinson v. State, 235 Ala. 7, 176 So. 812. The ruling of instant concern does not violate this rule.

The remarks of the deceased, if made, were not necessarily directed to the appellant. It is extremely doubtful that it even amounted to a threat or evinced any hostility on the part of the deceased toward any person.

There was some evidence that the deceased reached his hand in his pocket and "grabbed at the defendant." The State contended that the deceased did not have a knife in his possession at the time in question.

■ A witness testified that he made a brief examination of the locale of the offense a short time after the homicide and returned next morning and continued his search. The solicitor asked him if he found a knife on the grounds at either time. The appellant's objections were: "We object to that. If Your Honor please, the witness said he searched 10 or 15 minutes that night and then went back the next morning." The effect of the objections was the imposition of only the general grounds. The evidence sought by the inquiry was not manifestly illegal. Therefore in the absence of special grounds which should have pointed out valid objections, if any were applicable, the court should not be cast in error for overruling the objections. Louisville & Nashville R. Co. v. Scott, 232 Ala. 284, 167 So. 572.

■ The deceased lived in the home with his father and mother. The parents were permitted, over appellant's objections, to testify that to their knowledge their son never owned a knife and on the day in question, to their knowledge, did not have one in his possession. There were some fac-

tual foundations for these replies. This aside, we think that the inquiry related to an undisputed fact. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563; Stallings v. State, 249 Ala. 1, 32 So.2d 233.

There was no evidence that the deceased had a knife when he was killed. No weapon of any kind was found on his person by the officers or undertaker. The mere proof that he put his hand in his pocket just before he was cut did not necessarily tend to establish that he possessed a knife.

The deceased was cut on the throat and on the back, a little to the left of his spine and slightly above the waist line. The State introduced in evidence, in one group, three photographs of the deceased. The court permitted their introduction over the objections of the appellant. The pictures were taken at the undertaker's parlors, and each depicts the nature and location of the wounds on the body of the deceased. Since the three exhibits were offered in bulk and the objections were posed to their introduction as a whole, we will confine our review to the propriety of the admissibility of only one of the exhibits.

■ Exhibit number 2 shows the left side of the nude body of the deceased from slightly below his waist up. The picture clearly discloses the stab or cut in the left side as indicated herein above. There can be no doubt that this picture was helpful to the jury in enabling it to determine the nature, extent, and character of the wound at this location. There is nothing shown that would tend to unduly inflame the mind of the jury. Davis v. State, 257 Ala. 447, 59 So.2d 592; Fewell v. State, 259 Ala. 401, 66 So.2d 771; Wilson v. State, 31 Ala.App. 21, 11 So.2d 563; Smarr v. State, 260 Ala. 30, 68 So.2d 6; Jackson v. State, 260 Ala. 641, 71 So.2d 825.

The appellant presented Basil Denny and Ellis Morton as witnesses in his behalf.

■ In his argument to the jury the defendant's attorney stated: "There is something rotten in Denmark because the State didn't put Basil Denny and this Morton witness on the stand." The trial judge sustained the State's objections to this remark and excluded it from the consideration of the jury. Clearly this ruling was correct. Morris v. State, 25 Ala.App. 494, 149 So. 359; Jackson v. State, 193 Ala. 36, 69 So. 130; Forman v. State, 190 Ala. 22, 67 So. 583; Manley v. Birmingham Ry. Light & Power Co., 191 Ala. 531, 68 So. 60; Crawford v. State, 112 Ala. 1, 21 So. 214; Ethridge v. State, 124 Ala. 106, 27 So. 320; Hutcherson v. State, 165 Ala. 16, 50 So. 1027; McDaniel v. State, 20 Ala.App. 407, 102 So. 788; Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 So. 451; Jordan v. Austin, 161 Ala. 585, 50 So. 70; Ingram v. State, 29 Ala. App. 144, 194 So. 694; Jones v. State, 20 Ala.App. 247, 101 So. 331; Willingham v. State, 261 Ala. 454, 74 So.2d 241; Spears v. State, 22 Ala.App. 257, 114 So. 477.

■ A motion for a new trial was filed on April 28, 1953. This was within the time required by law. On March 8, 1954, an amendment was filed to said motion. Many of the grounds in the amendment are not germane to the grounds in the original. In this state of the record we are not privileged to review the ruling of the court in relation to these new matters which are posed in the amendment. Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388; Stephens v. State, 36 Ala.App. 444, 58 So.2d 644.

■ There was much conflict in the testimony. The verdict of the jury is amply supported by the evidence. In accord with the familiar authorities we are not authorized to disturb the action of the court in overruling the motion on the stated grounds that the verdict was contrary to the great weight of the evidence.

After a very careful study and consideration of the record we do not find any reversible errors.

The judgment below is ordered affirmed.

Affirmed.