96 So.2d 441

**Robert Earl POPE**

v.

**STATE.**

**7 Div. 402.**

Court of Appeals of Alabama.

Jan. 22, 1957.

Rehearing Denied March 5, 1957.

**44**

Stringer & Montgomery, Talladega, and McKay, Livingston & Worthy, Sylacauga, for appellant.

John Patterson, Atty. Gen., Bernard F. Sykes and George Young, Asst. Attys. Gen., for the State.

PRICE, Judge.

The indictment charged first degree murder of John Frederick Ridley. Appellant was convicted of murder in the second degree and was sentenced to the penitentiary for a term of Twenty years.

The difficulty which resulted in the death of Fred Ridley occurred at the home of a Mr. and Mrs. Morris in Talladega County on Saturday, November 5, 1955.

The testimony for the State tended to show that Fred Ridley was present at the Morris home from about 3:00 o'clock in the afternoon until the shooting took place. Appellant, in the company of one Kenton Burks, arrived at the Morrises about 9:30 p. m. Burks went into the house, followed by Fred Ridley, who at that time was at the well. Appellant remained outside until Burks sent a little Morris girl to tell Pope that he, Burks, intended to spend the night. Pope entered the house and insisted that Burks leave with him. They left the house together, followed by Ridley, who stated that he was going with them.

Mrs. Morris testified that shortly after the three men went outside she heard defendant say, "don't come on me with that knife, Fred," and upon looking out the kitchen window she observed that defendant had a flashlight shining on Ridley, who was standing about five feet from Pope

with his left arm raised, but she couldn't see whether Ridley had anything in his hand. Burks said, "Don't shoot him, Robert Earl. He won't hurt you." Thereupon defendant fired one shot. The witness turned from the window and heard two more shots fired in rapid succession. She stated that after the shooting defendant "took off in a hurry" in his automobile, but when Burks called to him to come back and take Ridley to the hospital he backed up and allowed deceased to be placed in the back seat of his automobile.

Kenton Burks testified that while he was riding around with appellant that afternoon he saw in the glove compartment of appellant's automobile a .25 Caliber Colt automatic pistol. It was his testimony that after the three men got outside the Morris house witness and Fred Ridley had a discussion about some whiskey Burks and Ridley had bought together; Burks claimed Ridley had not given him his part of the whiskey. He stated Ridley turned from him and started walking in Pope's direction; that he didn't hear anything said by either Ridley or Pope at that time, and didn't see a knife or anything else in Ridley's hand. After the first shot was fired witness told defendant "not to shoot him, that I didn't think he was gonna bother him." Defendant kept telling Ridley "not to come on him with that knife and cut him."

Defendant testified he and deceased were first cousins; that he walked to his car while Ridley and Burks were arguing among themselves in the yard at the Morris home; that he heard Ridley say to Burks, "You get your Goddamned knife, I have got mine;" that Burks backed away, followed by Ridley until Ridley turned and saw defendant and started toward him with a knife in his right hand; that deceased said to him, "I've been wanting to get a hold of you a long time. Now damn you, I have got you where I want you. I'm going to cut you all to pieces;" that up until that time he hadn't spoken a word to deceased; that when Ridley was within six

feet of him he, defendant, ran, and fell but got up again and ran to his car and got his gun from the dash compartment; that deceased continued to advance on him and that defendant fired the first shot into the ground; that deceased kept coming at him with the knife and that he fired a second shot when the deceased was within six feet of him; that deceased made a lunge at him with the knife drawn back and he fired the third shot; that after the shooting he "stomped" the accelerator to the floor board then hit the brakes, backed up and placed deceased in the back seat of his automobile and took him to the hospital at Sylacauga, first going by defendant's home to pick up his wife and child; that he then drove to the police department where the police discovered a knife on the back floor board of his car; that he told the officers he thought deceased cut him on the back, that his coat was cut and he thought deceased cut it.

W. L. Sowell, a State Toxicologist, testified there were no blood stains on the knives introduced in evidence. He did find cotton fibers on the blade of one knife but they were not fibers from the jacket worn by defendant at the time of the homicide. The outer lining of the jacket had been cut in three places in the back, however, in his opinion the cuts were not made by a knife, but were made by two cutting edges coming together, such as a pair of scissors.

Mr. Sowell also testified that he performed an autopsy on the body of deceased; that the bullet which took his life was fired from the .25 Caliber Colt pistol belonging to defendant and that death resulted from a hemorrhage of the descending aorta produced by a bullet wound.

■ The evidence presented questions for the jury's determination and was sufficient, if believed by them to the requisite degree, to sustain the verdict. There was no error in the refusal of the requested general affirmative charge nor in denying the motion for a new trial.

■ A predicate was sought to be laid for the admission of certain statements by defendant to Mrs. Cleveland, an employee of the Sylacauga Hospital, in this manner: "Now, at that time and place did you or anyone in your presence or hearing or in the presence or hearing of the defendant then or there or at any time prior thereto threaten Robert Earl Pope, make him any promises, offer him any reward, remuneration or inducement whatsoever to get him to make a statement to you?" The witness answered, "No, sir."

We find no merit in counsel's insistence that the predicate was improper because the witness was asked whether the defendant was threatened, etc., "at any time prior thereto," and for this reason she was called upon to testify to something that happened at a prior time when she was not present.

A sufficient predicate having been laid, the court did not err in admitting in evidence defendant's statements.

■ But, in any case, the statements attributed to defendant by the witness that: "I have got my first cousin out here shot" and "I want to get something done for him" and that defendant said the man was Fred Ridley, were not, in our opinion, confessions of guilt nor inculpatory admissions in the nature of a confession, and were not within the rule requiring that a predicate be laid as for a confession. McGehee v. State, 171 Ala. 19, 55 So. 159; Read v. State, 195 Ala. 671, 71 So. 96.

What we have said here as to the form of the predicate applies also to the form of the predicates laid for the admission of confessory statements made by defendant to deputies sheriff Cooper and Atchley.

■ Counsel contends that the effect of the testimony of Mrs. Morris that she saw deceased with a five dollar bill the afternoon before the homicide and that of Coroner Perkins that he found no money in the billfold or pockets of Ridley after his death, was to lead the jury to believe that robbery was the motive for the homicide

and that the court erred in allowing the introduction of such testimony.

This contention is likewise without merit. The court, at the conclusion of the State's testimony in chief, ex mero motu instructed the jury: "Gentlemen, at this time I am going to exclude from your consideration the testimony of Mrs. Exer Morris concerning a Five Dollar bill that she saw on one occasion. You are not to consider that for any purpose."

Objections to the questions propounded to the Coroner came after the questions had been answered, and were too late. See Ala.Dig., Crim.Law, ⊜693 for numerous citations of authority.

Objection to question to the witness Burks as to whether it was his signature at the bottom of each of the four pages of a statement purported to have been made by him to the officers came after the question had been answered.

State's exhibits Nos. 2 and 3 are photographs of deceased's left side, indicating the area of the body penetrated by the bullet. In our opinion the pictures were properly admitted in evidence. Harbin v. State, Ala.App., 82 So.2d 565, certiorari denied 263 Ala. 699, 82 So.2d 569; Davis v. State, 257 Ala. 447, 59 So.2d 592.

Mrs. Morris' testimony that immediately after the shooting she heard defendant say to Kenton Burks, "Well, I've done it, I am into it now," in reply to Burks' exclamation: "Robert Earl, you have shot Fred" was admissible as a part of the res gestae and no predicate as to its voluntariness was required. Holland v. State, 162 Ala. 5, 50 So. 215; Reeves v. State, 201 Ala. 45, 77 So. 339; Hall v. State, 208 Ala. 199, 94 So. 59.

For the same reason, no predicate was required for the admission of substantially the same statement attributed to defendant by the witness Burks.

There was no error in the court's action permitting the Solicitor to refresh the witness Burks' recollection as to such statements by the defendant. Bringhurst v. State, 31 Ala.App. 608, 20 So.2d 885, and cases there cited.

The court properly sustained the State's objections to questions asked the witness Burks on cross examination as to whether State's exhibit No. 11 was the knife that deceased tried to cut witness with on previous occasions. Smith v. State, 142 Ala. 14, 39 So. 329; Higginbotham v. State, 262 Ala. 236, 78 So.2d 637; Buffalow v. State, 25 Ala.App. 227, 143 So. 907.

There was no error in allowing the deputy sheriff Cooper to testify that when defendant told the Solicitor, shortly after the homicide, that deceased had stabbed him three times on the back of his shoulder, the Solicitor asked: "Do you mean that this boy Fred Ridley * * * cut or stabbed you on the left shoulder there after you shot the last time?" and that defendant made no reply to this question. Powell v. State, 5 Ala.App. 75, 59 So. 530; see also Ala.Dig., Criminal Law, ⊜407(1).

Insistence for error in brief is that the toxicologist testified to unauthorized conclusions and that his statements were invasive of the province of the jury when he was permitted to give his opinion as to whether the cuts in defendant's jacket were made with the knife identified as State's exhibit 13 or with a knife of that type with one cutting edge, and to state that in his opinion the cuts were made with an instrument having two cutting edges coming together, such as a pair of scissors.

No objection was made on these specific grounds and such insistence is not presented by the general grounds of objection. Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665. Nor do such general grounds of objection raise the question of the witness' qualification as an expert to give such testimony. Richardson v. State, 37 Ala. App. 194, 65 So.2d 715; Alabama Great Southern R. Co. v. Moundville Motor Co., 241 Ala. 633, 4 So.2d 305; Liberty Nat. Life Ins. Co. v. Bailey, 34 Ala.App. 199, 38 So.2d 295.

Defendant's witness Hudson Hamilton testified that he knew appellant's general reputation in the community where he lived and that it was good. On cross examination the State propounded to him this question: "Have you heard it said prior to November 5, 1955, that the Pope boy was expelled from that school because of his bad conduct?" The court overruled the defendant's objection and the witness answered: "I heard he was expelled from school. I didn't know why."

Counsel argues in brief that the court's action permitting this question to be answered constituted reversible error because the testimony (1) shed no light on the good or bad character of defendant, (2) involved a conclusion as to what amounted to bad conduct, (3) gives effect to the judgment of some unknown person that defendant was guilty of bad conduct.

The objection to said question was on the specific ground that "it would not involve any offense involving moral turpitude." Only the ground posed in the objection will be considered, those omitted being deemed to have been waived. Jackson v. State, 35 Ala.App. 542, 50 So.2d 282; Harbin v. State, 15 Ala.App. 57, 72 So. 594.

In Morris v. State, 25 Ala.App. 175, 142 So. 685, 688, the statement is made that the "violation of the statute not involving moral turpitude does not affect the defendant's general character," citing Mays v. State, 218 Ala. 656, 120 So. 163.

But the rule is well recognized that the cross examination of defendant's character witnesses with reference to their having heard rumors of certain derogatory acts or conduct on the part of defendant is permissible as evidence affecting the credibility of the witnesses testifying to good character, and not as evidence affecting the character of the defendant. Vaughan v. State, 201 Ala. 472, 78 So. 378; Pierce v. State, 228 Ala. 545, 154 So. 526; Mullins v. State, 31 Ala.App. 571, 19 So.2d 845; Osborn v. State, 32 Ala.App. 105, 22 So.2d 538.

The defendant introduced evidence tending to show deceased's bad character for peace. The question propounded to each of such witnesses was substantially as follows: "I will ask you if you knew or thought you knew Fred Ridley's general character and reputation in the community down there where he lived for violence, ferocity, vindictiveness, bloodthirstiness or for being an overbearing man?"

This question was propounded to State's witness J. O. Burks in rebuttal: "Now, I'll ask you Mr. Burks, prior to November 5, 1955, do you know or think you know Fred Ridley's reputation in the community there for being a violent bloodthirsty, fussy, overbearing man?" Defendant objected to the question on the ground that proper predicate had not been laid. The court asked counsel to state in what particular way the predicate was improper. Counsel answered: "On the ground that it doesn't properly characterize the characteristics." The court asked: "Do you mean that those terms he used are not the same ones you used?" Counsel answered: "Yes, sir." The court sustained the objection to the question and permitted the question to be propounded in this form: "I'll ask you if you know or think you know his general reputation prior to November 5, 1955 for being a violent, ferocious, bloodthirsty or overbearing man?" Defendant's objection to this question was "on the same grounds as interposed to the last question objected to." The argument in brief is that because of the alternative manner in which the question was asked, the inquiry is limited to whether deceased was an overbearing man. There is no merit in such contention. The evidence offered was in rebuttal of the original evidence offered by the defendant.

After a most careful examination of the record in this case, which contains almost 700 pages, we have found no reversible error, therefore the judgment below is ordered affirmed.

Affirmed.

## On Rehearing

We adhere to our ruling as to the correctness of the trial court's action permitting defendant's character witness, Hudson

Hamilton, to be asked on cross examination if he had not heard that defendant had been expelled from school because of his bad conduct, which ruling we are urged to reconsider.

■ Counsel further urges that once such evidence was admitted defendant should have been allowed to prove that he had not been expelled and that the trial court erred in sustaining the State's objection to this question to defendant: "Robert Earl, have you ever been expelled from school?"

■ The truth or the falsity of the rumors or reports testified to by the witness Hamilton is entirely immaterial to the issue. Maxwell v. State, 11 Ala.App. 53, 65 So. 732; Moulton v. State, 88 Ala. 116, 6 So. 758, 6 L.R.A. 301.

■ The general rule is that character, whether good or bad, can only be proved by general reputation, and not by particular acts or conduct. See Ala.Dig., Crim.Law, ☞380 for numerous citations. This question to defendant was an attempt to prove his good character by testifying that he had not been expelled from school, and such evidence was not admissible.

Application overruled. Opinion extended.