91 So.2d 476

Clarence JOHNSON

v.

STATE of Alabama.

2 Div. 373.

Supreme Court of Alabama.

Dec. 13, 1956.

John L. Godbold and C. E. Watson, Camden, for appellant.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

STAKELY, Justice.

Clarence Johnson (appellant) was indicted for murder in the first degree. On a plea of not guilty trial of the case resulted in a conviction of murder in the first degree and a sentence of death. Motion for a new trial was overruled. This appeal followed.

The alleged homicide was committed about seven or eight A.M. on Sunday morning of January 1, 1956, near Camden, Alabama. The testimony showed in substance the following. Homer Smith, the decedent, and Clarence Johnson (appellant) both worked at the Smith Sawmill Company near Camden. Homer Smith was also a part time collector for Thagard Loan Company. Clarence Johnson also operated a cafe and dance hall on Friday and Saturday nights about six miles from Camden.

On December 31, 1955, while Clarence Johnson was operating his cafe and dance hall, Homer Smith came to the place three or four times during the night and tried to collect a few dollars that Clarence Johnson owed the Thagard Loan Company. Tendencies of the evidence showed that Homer Smith cursed and made threats against the defendant.

Jimmie Threadgill came to the dance hall after Homer Smith had left the last time and had a fight with Clarence Johnson in which he drew a knife on Clarence Johnson.

Early in the morning of January 1, 1956, Clarence Johnson, Richard Lawrence, C. R. Nettles and the son of Clarence Johnson went to the home of Clarence Johnson near the road in Camden. The four men drank approximately one-half gallon of whiskey. After a short time Clarence Johnson left his home and went to the home of Mable Ray. He had his shotgun with him. He said to her, "Him and Jimmie Threadgill had been into it and he had to protect himself." He further said, "Jimmie Threadgill chunked in his face at his joint and somebody said 'Jimmie Threadgill was going to get his gun.' So he came to get his to protect himself." He got one-half pint of shinny at Mable Ray's. He slept in the home of Mable Ray. About seven A.M. he left the house of Mable Ray and went down the road. About five minutes later Mable Ray heard a sound of a gun fired.

Laura) McCall, a girl about thirteen years of age, testified that she saw Clarence Johnson come through the backyard where she was playing, carrying a gun. When she asked him what he was going to do with the gun he said, "Kill anybody that messed with him." Clarence Johnson then proceeded in the direction of the railroad.

Tendencies of the evidence show that practically every Sunday morning Homer Smith went to the plant of the Smith Sawmill Company near Camden near the rail-

road track to look around. He was the foreman at the Plant. On the morning of January 1, 1956, he was seated in a Chevrolet car near the plant with one Jack Taylor. The car was in a public road at the railroad track. According to Jack Taylor, Clarence Johnson was seen walking toward the car in which he and Homer Smith were seated. "Homer Smith said, 'Yonder comes Toe-Joe (this was a nick name of Clarence Johnson). I'm going to stop and have some fun.' Mr. Smith said, 'Good morning, Toe-Joe. How come you aint got the boilers going?' And Toe-Joe said, 'Don't amount to a damn whether I ever get them going or not.' And Toe-Joe said something about last night and Mr. Smith said, 'If I treated you wrong I am willing to apologize.' And Toe-Joe said, 'You aint apologizing to me.' And Mr. Smith said, 'If you got your gun after me I'll go up there and get Mr. Lummie to come and put you in jail.' And Mr. Smith said, 'I aint got no gun in here at all, and I'll open the door here and let you see I ain't got no gun in my possession.' And he pushed the door open and his foot went out on the running board, and that time he shot him. And he raised up and fell on my lap and said, 'O, Lord, he shot me.'"

According to Jack Taylor, "Clarence Johnson took the empty shell out of the gun and put another in and he said, 'I told you I'd kill you.' And he kept on around the commissary."

P. C. Jenkins, the Sheriff of Wilcox County, using bloodhounds, at about one P.M. on January 1, 1956 found Clarence Johnson asleep in the woods about three-quarters of a mile from the place where the shooting took place. Clarence Johnson had a shotgun and shells in his possession at the time.

Edwin Tate, Deputy Sheriff of Wilcox County, testified that in the late afternoon of January 1, 1956, he had a conversation with Clarence Johnson in the presence of the solicitor. No one threatened Clarence Johnson, offered him any reward or hope of reward or any inducement to persuade him to talk. Johnson told Tate that he had got shells and his gun and had met Mr. Smith at the railroad tracks, that Mr. Smith had cursed him the night before and that when Mr. Smith had opened the door and attempted to get out of the car, he shot him. He testified that Clarence Johnson further said that he had planned to waylay Smith along the railroad and whip him the next morning, as Mr. Clarence Smith didn't allow any fighting on the sawmill property.

The defendant took the stand in his own behalf and testified that he was a fireman at the mill at the Smith Sawmill Company. He also operated a kind of "joint", a dance hall, on Friday and Saturday nights of each week. On the day before the shooting Smith and a man from the Thagard Finance Company came in his place of business three times to get him to pay $4, a weekly installment upon his loan with the company. Clarence Johnson paid $2 of the $4 due and an argument followed as to whether he should have until Monday to pay the other $2. According to Clarence Johnson, Smith was abusive and continued to press him for payment but it was finally agreed that he should pay the remaining amount due the following Monday afternoon.

Clarence Johnson also testified that later he had a fight with one Jimmie Threadgill on Saturday night and that Threadgill had got after him with a knife. After he closed his place he went home and sat around with three men and between them they drank a half gallon of shinny, except for the portion used to start a fire in the stove. Early in the morning he got his shotgun because of the fight with Threadgill, "he being 35 years old and me being 55 years old and there was no way for me to defend myself against him," that he did not tell Mable Ray that he was going to kill Jimmie Threadgill, but said that, "if Jimmie is going to come back and take the shop over I had to protect my property," and then slept at the house of Mable Ray, stayed there until next morning and happened to meet Homer Smith at the railroad track. He

claimed that Smith cursed him and reached in his glove compartment and that is when he (Clarence Johnson) shot him and after which he went off in the woods and went to sleep.

On cross examination Clarence Johnson admitted that he had been convicted of murder at a previous time. He denied that he had told Laura McCall that he was going to kill a man or that after the shooting he had said to Taylor, "I told you I'd kill him."

■ I. It is earnestly argued that Clarence Johnson should have been permitted to testify and explain to the jury the details and circumstances of the difficulty between himself and Jimmie Threadgill because the State had previously produced evidence of such difficulty. Of course it is a general principle that where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment. Cummings v. State, 34 Ala.App. 650, 43 So.2d 326. Further if the State introduced evidence of a prior difficulty which is illegal, the defendant can show all the particulars of the difficulty, even though illegal, to rebut the illegal evidence introduced by the State. Longmire v. State, 130 Ala. 66, 30 So. 413.

■ This case, however, presents a peculiar situation. It is not testimony of a previous difficulty between Clarence Johnson and the decedent Homer Smith which is sought to be introduced, but details of a difficulty between Clarence Johnson and Jimmie Threadgill. Clarence Johnson was not being tried for any crime involving Jimmie Threadgill and in our judgment nothing detrimental to Clarence Johnson was brought out in connection with the previous difficulty with Jimmie Threadgill nor was any illegal evidence introduced. The proof introduced by the State explained why the defendant had the shotgun with him in that Clarence Johnson felt the need of having the shotgun to protect himself against the acts of Jimmie Threadgill.

The allowance of such proof was proper. Rollings v. State, 160 Ala. 82, 49 So. 329.

■■ Ordinarily the details of a prior difficulty are not admissible beyond the proof of the prior difficulty and its gravity. Bryant v. State, 252 Ala. 153, 39 So.2d 657; Bowen v. State, 217 Ala. 574, 117 So. 204. The testimony of Clarence Johnson himself showed that he got his gun to protect himself against Jimmie Threadgill because of the previous difficulty. Beyond this the defendant could not have testified and did not testify with reference to the difficulty with Jimmie Threadgill. Beyond this there was no connection between the difficulty Clarence Johnson had with Homer Smith and the difficulty which he had with Jimmie Threadgill. It is settled that evidence is inadmissible to show a difficulty between the accused and a third person in no way connected with the victim or the offense. Wiggs v. State, 24 Ala.App. 22, 129 So. 706.

We accordingly find no error in the ruling of the court that there could be no further inquiry into the prior difficulty between Clarence Johnson and Jimmie Threadgill.

■ II. There was no error in admitting the testimony of Tate, the Deputy Sheriff, as to the statement claimed to have been made to him by Clarence Johnson in which he admitted planning to waylay Homer Smith and whip him. Towns v. State, 32 Ala.App. 483, 27 So.2d 235; Patty v. State, 242 Ala. 304, 6 So.2d 399; Stephens v. State, 250 Ala. 123, 33 So.2d 245.

■ III. There was no error in allowing the State to show the former conviction of Clarence Johnson for a felony. The State had the right to show for purposes of impeachment that Clarence Johnson had been previously convicted of a felony involving moral turpitude. Ragland v. State, 238 Ala. 587, 192 So. 498; Rollings v. State, 160 Ala. 82, 49 So. 329; § 434, Title 7, Code of 1940.

■ IV. There was no error in allowing proof of what the defendant said shortly before and immediately after the shooting of Homer Smith. In Willingham v. State, 261 Ala. 454, 74 So.2d 241, 244, reference was made to the long established rule of this jurisdiction that, " 'The acts, declarations, and demeanor of an accused, before and after the offense, whether a part of the res gestae or not, are admissible against him, but unless a part of the res gestae are not admissible for him.' "

■ V. On the authority of Blue v. State, 246 Ala. 73, 19 So.2d 11, it is argued that the questions propounded to Clarence Johnson by the solicitor were such as to create ineradicable bias in the minds of the jury and thereby prevent a fair trial. We have considered the record in this respect very carefully and find no merit in this position. There is no need to set out all the questions and answers but we do set out the last two or three questions and answers in order that the matter may be understood.

"Q. And you walked up there, and when you threw a shotgun on him he told you, 'Toe-Joe, if I did anything to offend you I am sorry.' He made that statement? A. No, No, sir; No, sir. Mr. Smith started cussing time he opened the car door.

"Q. You didn't want him to apologize? A. He didn't make none. No, sir.

"Q. You wanted a life and you got a life, didn't you? A. No, sir."

The Court thereupon said to the solicitor, "Just ask direct questions. That is too argumentative."

The only question which might be said to have been out of line was the last question and the court admonished the solicitor that the question was too argumentative.

We find nothing to sustain the view that such ineradicable bias was engendered in the minds of the jury as to prevent a fair trial.

Not only have we considered the matters stressed in brief by counsel but we have also read the record with great care and it is our considered judgment that there is no error in the record and that the judgment of conviction is due to be affirmed.

Affirmed.

All the Justices concur.