114 So.2d 412

Oliver L. HUTCHINSON

v.

STATE.

5 Div. 547.

Court of Appeals of Alabama.

Sept. 1, 1959.

D. T. Ware, Roanoke, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

PRICE, Judge.

Oliver L. Hutchinson appeals from a conviction of murder in the second degree and a sentence of ten years in the penitentiary.

The evidence is without dispute that defendant killed Mack Roland by shooting him with a shotgun. The killing occurred at the home of Fannie Askew, in Roanoke, Alabama, about 5 o'clock, P.M., on October 16, 1957.

The evidence for the state tends to show: That defendant and Mack Roland had an argument over a card game at the home of Robert McPherson about 12:30 the day of the killing. Sam Hill was also present.

Shortly before the killing defendant, carrying a shotgun, came from the back of the Askew house and stopped between Askew's and Robert McPherson's. Immediately thereafter Mack Roland stopped his car across the street, got out and, also carrying a gun, walked to where defendant was standing. Roland asked defendant what he was going to do with the gun and defendant asked Roland the same question, adding that he, defendant, was not going to do anything if Roland didn't do anything. After this exchange of conversation defendant and Roland shook hands. About this time Sam Hill, also carrying a shotgun, arrived on the scene. After Roland had inquired of defendant and Hill whether they were angry with each other and received negative replies, defendant and Hill shook hands. Roland, after instructing Hill to get in Roland's car, stated that if defendant shot him, Roland, Hill would shoot defendant. After Roland got in his car he said, "Huh?" as though answering somebody, then got out, taking his gun, walked over and looked under the Askew house, asking, "Which a way did he go; where is he at?"; that Roland then started up the steps and as he reached the top step he raised his gun, two shots were fired and Roland fell. Defendant did not live at that house, and, so far as the witnesses knew, had not been invited into the Askew house.

Jesse Brown, an insurance salesman, testified he was seated in his automobile parked behind Roland's car; that he observed the actions of defendant, deceased and Sam Hill but did not hear their conversation; that Hill shook hands with defendant and then went and put his gun in Roland's car; that Roland came to witness' car and talked briefly with the witness, returned to where defendant was standing, talked and shook hands with him and returned to his car. Witness had just gotten out of his car when he observed Roland looking under the Askew house; that Roland then walked hurriedly across the yard and started up the Askew steps; that as Roland was about at the door witness heard two shots fired and Roland fell forward on his face in front of the door; that in witness' opinion, as Roland "was going up to the porch and he was in a position to fire, and as he walked up to the porch Hutchinson fired at him, hitting him, his reaction pulled the trigger and he fired."

Witness Brown further testified he did not hear anyone call to Roland from the Askew house after he crossed the street and got in his car; that as Roland walked up the steps witness heard a voice inside the house say, "Don't come in here"; that inside the house, five or six feet from the point where deceased fell, there was a place dug out in the floor.

P. O. Webb, a city policeman, testified when he reached the scene of the killing decedent was lying dead on the front porch, which measured six feet from the

top step to the front door; that a .16 gauge shotgun, with an empty shell in it was lying near him; that inside the house and four or five feet from the front door there was a fireplace; that the front of the hearth next to the door had been struck by gunshot; that defendant stated to the officers that they had some trouble at a gambling game at the next house and they all went and got their guns and came back.

Defendant testified he arrived at the Askew house about 15 or 30 minutes past 4 o'clock; that he was carrying a shotgun and as he was walking down the street, Mack Roland, who was holding a shotgun as he stood beside a car, asked defendant if he was looking for him, Roland; that defendant kept walking and replied he was not looking for Roland because Roland had not done anything to him; that defendant continued down the street to the house of Robert McPherson, which was next door to the Askew house, and knocked on both the front and back doors; that Roland, who had driven down to and parked across the street from the Askew house, got out and came over to where defendant was standing, and the two began a conversation; that Roland asked if defendant was angry with him and defendant replied in the negative; that Roland then asked if he was angry with Sam Hill; that at that moment Hill arrived on the scene and asked defendant if he was mad with him, Hill; that defendant replied he was not angry with either Roland or Hill, whereupon defendant shook hands with Hill; that Roland after instructing Hill to go to the car, showed defendant his gun and stated that if defendant was angry with him, he, Roland, would put all three of the shells, which were in the gun, in defendant; that Roland further stated if defendant shot him, Hill would shoot defendant, and that if defendant shot Hill, Roland would shoot defendant; that after these remarks Hill went and put his gun in the car and Roland turned and walked off; that defendant then walked through the back door of the Askew house to the mantelpiece in the front room; that he heard the women

in the room holler "don't come in here", and he looked up and saw Roland coming up in the open door, with his gun thrown up, where upon both men fired their guns at the same time; that he had not had any trouble with Roland earlier in the day, but that around noon he and Hill had had a difficulty.

Defendant testified further that in the gambling game he pulled the change to one side of the table and left it there, but after the others said he didn't win he laid two dollars on the table; that Hill slapped him into a window, breaking the pane. Defendant stated after he shook hands with Roland and Hill at Askew's and they went to the car, and he went in the house, he did not holler or say anything to Roland, and the next time he saw Roland he was coming in the door with his gun.

■ The questions involved were for the jury's determination. After a full and careful consideration of the evidence adduced, we are of opinion, it was sufficient to sustain the verdict. The affirmative charge requested in writing was refused without error, and the motion for new trial was properly overruled.

State's witness Robert McPherson testified on direct examination that defendant and deceased had a difficulty at McPherson's home about 12:30 on the day of the killing. Sam Hill was also present. On cross-examination the witness was asked if the difficulty consisted of an argument and the witness answered in the affirmative. On redirect examination, over defendant's objections, the witness was permitted to testify that deceased and defendant were arguing "over some money * * * O. L. figured he win it and the other guy figured he win it"; that both of them were arguing and defendant told Mack "he thought he win the money, he stole a card or something"; and, "If any of you mess with me * * * I'll get up from here and I won't give a damn about none of you son of a bitches."

Appellant contends the trial court erred in permitting the witness to relate the details of the previous difficulty.

■ "Ordinarily the details of a prior difficulty are not admissible beyond the proof of the prior difficulty and its gravity. Bryant v. State, 252 Ala. 153, 39 So.2d 657; Bowen v. State, 217 Ala. 574, 117 So. 204." Johnson v. State, 265 Ala. 360, 91 So.2d 476, 479.

■ We are of opinion the trial court's rulings were not violative of the foregoing rule, but that the evidence concerning the former difficulty was admissible under the principle that "where the facts testified to consist of connected actions and transactions leading up to and explanatory of the killing. These actions and circumstances need not necessarily be a part of the res gestae, in the sense that they become a part of the crime itself, but they are admissible where they throw any light on actions, animus, or intent of the defendant, or his mental attitude at the time of the fatal difficulty, and his participation therein * * *". Sexton v. State, 28 Ala.App. 59, 180 So. 729, 730, certiorari denied 236 Ala. 20, 180 So. 731. See also Alberson v. State, 254 Ala. 87, 47 So.2d 182; Pierce v. State, 28 Ala.App. 40, 178 So. 248.

The record shows the following with reference to objections to the solicitor's argument to the jury:

"During Mr. Young's closing argument to the jury, the following occurred:

"Mr. Ware: We object to the argument. There is not a scintilla of evidence that he put out any threats or told anyone, and we object to the solicitor's argument that this defendant walked the streets down there threatening and—

"The Court: Mr. Ware, the court thinks that is just a lawyer's speech before the jury. I don't think this lawyer or any other lawyer deliberately misquotes testimony.

"Mr. Ware: There is no evidence like that.

"The Court: Overrule your objection.

"Mr. Ware: We reserve it."

The record does not sufficiently disclose the statement of the solicitor in its context for us to say the argument was improper. Mincy v. State, 262 Ala. 193, 78 So.2d 262.

It is insisted the court erred in refusing defendant's requested charge 4, which is as follows:

"4. The court charges the jury that if the deceased made a sudden unprovoked murderous attack on the defendant and the deceased being then and there armed with a deadly weapon and in the act of effectuating upon the defendant his murderous purpose, and after considering all the evidence in this case you find this to be true and you further find from all the evidence in the case that the defendant was free from fault in bringing on the difficulty he had a right to stand his ground and kill his assailant."

In Johnson v. State, 257 Ala. 644, 60 So. 2d 818, Mr. Justice Goodwyn reviewed the decisions of the Supreme Court and of this court approving a similar charge. See also Bailey v. State, Ala.App., 112 So.2d 505,[1] certiorari denied Ala., 112 So.2d 507.[2] In Walker v. State, 220 Ala. 544, 126 So. 848, 852, the court said this principle of law is applicable and to be given in charge "where the evidence is such, as a matter of law, the defendant is under no duty to retreat."

■ It is our view that under the tendencies of the evidence the charge was abstract and was properly refused.

The judgment is affirmed.

Affirmed.

1. Ante, p. 95.

2. 269 Ala. 693.