[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 971 
The appellant was indicted for the murder of her ex-husband, John W. Wyrick, by shooting him with a pistol in violation of Ala. Code § 13A-6-2 (1977). The jury convicted her of manslaughter and the trial court fixed her punishment at ten years in the state penitentiary.
The evidence is uncontroverted that at approximately 9:54 p.m. on July 14, 1980 the deceased came to the appellant's home. Miss Shelia Miller, a friend of appellant and appellant's daughter, Terry, let the deceased in the front door. Appellant did not wish to see the deceased and had had Terry lock her bedroom door and tell the deceased she was not home. The deceased had called the appellant's home several times that day desiring to see appellant and also threatening to kill "the whole g.d. bunch" of them, saying that "he was coming back." (R. 213) The deceased had been coming to the appellant's house two or three times a day for "two or three weeks and making phone calls . . . three or four times a day." (R. 275)
When Terry told the deceased her mother was not home the deceased called her a "lying bitch" and "started banging" on the appellant's bedroom door. (R. 208) The appellant had the light out in her bedroom and did not answer the deceased's knocking or make any other sounds indicating her presence. The deceased next walked to the front porch of the house, just outside the appellant's bedroom window, and unscrewed the light bulb to the front porch. Terry told the deceased to "get away" (R. 209) but he ignored her directions and moved towards her. The deceased then went back inside to the appellant's bedroom door and "started beating and telling her to let him in." (R. 210) Terry began "screaming real loud . . . just at the top of my lungs" when she "heard a shot." (R. 210)
Hearing her daughter's screams, the appellant fired her Charter Arms .38 Special *Page 972 
one time through her bedroom door fatally wounding the deceased. As the deceased turned and began to fall on his back the appellant opened her bedroom door and fired four more shots from close range into the deceased, emptying the pistol. The appellant, who had earlier called the Florence Police Department when the deceased arrived at her house to request their assistance, placed a second call for an ambulance. The deceased died shortly after police officers arrived at the scene. The appellant was immediately taken into custody. Further facts will be recited as they are pertinent to the issues.
 I
The appellant first alleges that the trial court committed reversible error in allowing Investigator Lawrence D. Smelley of the Alabama Bureau of Investigation to state his opinion as to the amount of force that would have been necessary to break the appellant's bedroom door open. We disagree.
Investigator Smelley testified generally concerning his investigation at the scene. His examination of the bedroom door in question revealed that
 "It was one of the old type doors that was probably — that was popular in homes built in the thirties and forties that had the wide border and then in the middle, it had a thin panel. It was just an old type door. It wasn't the double panel type doors that you see in more modern homes nowadays." (R. 133)
In response to a question by the trial court Smelley testified that he "examined the door to see if there had been any force placed against it." (R. 134) The trial court then overruled defense counsel's objection to Smelley stating his opinion, but cautioned the jury as follows:
 "Well, ladies and gentlemen, I OVERRULE THE OBJECTION. I will, however, certainly say to you, that it's for you to really determine that question. I'll let this witness testify to it or to his opinion, although it's not controlling on you. But I'll let him testify as to his opinion based on his examination and familiarity with it. Now, go ahead and answer it." (R. 135)
Smelley then testified that in his opinion, "if a person had really wanted to go through the door, he could have with not very much trouble." (R. 135)
Smelley was cross-examined extensively by defense counsel. He admitted that he did not know how much force it would take to "pop" a particular kind of door open. Smelley further admitted that he did not test the door, or have it tested by experts, to see how much force was necessary to break it. He did not know what kind of wood the door was made from and his only inspection of the door consisted of an "eyeball examination." (R. 137)
We believe it a fair reading of the record that Investigator Smelley was not qualified as an expert witness for the question he was asked to give his opinion.
It has been the traditional rule in Alabama that a lay witness can testify to facts which he observed but cannot testify to opinions, conclusions, deductions or inferences which are based upon facts. C. Gamble, McElroy's AlabamaEvidence § 127.01 (1) (3rd Ed. 1977). This general rule has been criticized as being unrealistic and assuming a low mentality and gullibility in jurors. C. Gamble, McElroy'sAlabama Evidence § 127.01 (2) (3rd Ed. 1977) and cases cited therein. See Justice Beatty's concurring opinion in Boatwrightv. State, 351 So.2d 1366, 1367 (Ala. 1977).
There are many exceptions to the general rule. C. Gamble,McElroy's Alabama Evidence § 127.01 (3) (3rd Ed. 1977). One such exception, which we find applicable here, is the "collective fact" or "shorthand rendition of fact" exceptions.Murrell v. State, 377 So.2d 1102, 1106 (Ala.Cr.App.), cert. denied, 377 So.2d 1108 (Ala. 1979).
 "A witness may testify to his opinion if it is a collective fact or a shorthand rendition of fact. This variety is most commonly referred to as the collective fact exception and arises when the facts observed by the witness are so many or so *Page 973 
inexpressible that he is allowed to give the jury his opinion. His opinion is conceived of as being a shorthand way of giving the facts and, consequently, does not constitute a violation of the opinion evidence rule. When the witness is asked, for example, if a particular person was drunk, this is considered permissible as a shorthand way of expressing several well known facts or characteristics."
 C. Gamble, McElroy's Alabama Evidence § 127.01 (3) Variety No. 7 (3rd Ed. 1977).
As in Murrell, supra, Investigator Smelley's examination of the door provided a logical and sufficient basis for his opinion. We thus hold that his opinion was admissible.
Even assuming error, the trial court's instructions to the jury combined with defense counsel's sifting and thorough cross-examination of Smelley's testimony rendered any such error harmless. ARAP, Rule 45.
 II
The appellant next contends that the trial court erred in refusing to give the following requested jury charge:
 "The Court charges the Jury, that the indictment as read to you in this case includes within itself the charge of murder, and the lesser included charges of manslaughter and criminally negligent homicide. It will be your duty to determine from all of the evidence that has been presented to you in the case whether or not the Defendant is guilty of any offense whatsoever, and in the event that you find her guilty of some offense, it will then be your duty to determine what offense the Defendant is guilty of."
The appellant at one point in her testimony stated that she fired through the door "more to scare . . . make them stop," that she thought her daughter and the deceased were together and that she didn't think about the possibility she might hit her daughter when she fired the gun. (R. 261) It is this testimony upon which the appellant now alleges the charge on "negligent homicide" should have been given. We disagree.
The charge as requested contains more than one legal principle. Gaston v. State, 359 So.2d 1170 (Ala.Cr.App. 1978). The first part of the charge, which is the only part that mentions "negligent homicide" is abstract as applied to the evidence and is not properly hypothesized on a "belief from the evidence." Hudson v. State, 335 So.2d 208 (Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala. 1976). Requested instructions which are mere statements of legal principles, without instruction as to the effect upon or application to the issues are abstract and may properly be refused. This is true even where a correct principle of law is set out. Hawkins v. State, 53 Ala. App. 89,297 So.2d 813, cert. denied, 292 Ala. 723, 297 So.2d 817
(1974).
Moreover, we do not believe that the testimony by the appellant, which is set out above, was sufficient for a charge on negligent homicide to have been properly given. At the least the appellant acted "recklessly" as that term is used for manslaughter in Ala. Code § 13A-6-3 (a)(1) (1977) as defined in Ala. Code § 13A-2-2 (3) (1977). See the commentary to Ala. Code §13A-6-3 (1977). Thus, we hold the charge requested to have been properly refused.
 III
The appellant testified on direct examination that the deceased had continually tried to "dominate" and "rule" her life since their divorce in 1974. (R. 251) The appellant stated that she and the deceased continued "dating each other off and on" after the divorce, but that she terminated all "romantic contacts" with him in February, 1980 after she learned he had been molesting her daughter. (R. 249)
On appellant's cross-examination, it was learned that Chris Wyrick, the deceased and the appellant's son, visited with his uncle in North Carolina in June, 1980 for approximately two weeks. The appellant stated that after Chris's visit was over she and the deceased left Alabama in two cars to pick him up. The appellant drove her car and the deceased drove his. The appellant testified *Page 974 
her car "started developing trouble in Atlanta . . . so we just left it there and went on up in his car. . . . [W]e went . . . straight up there and straight back." (R. 271) On the way back the deceased drove the appellant's car, after picking it up in Atlanta, and the appellant drove the deceased's car. The appellant's car ran out of gas south of Moulton. According to the appellant's testimony, the deceased "had put gas in the car . . . and . . . had primed the carburetor" when "a truck come by and blew it over and it boomed." (R. 273)
The following exchange then occurred:
"Q Did it burn? That's what I'm trying —
 "A Not totally. I mean — the insurance totaled it, but it wasn't a total —
 "Q Had you and he talked about burning that car prior to that time?
"A No, sir! That's the first car I ever owned.
 "MR. HOLT: If Your Honor, please, this is illegal, irrelevant, immaterial, prejudicial, and I move for a mistrial. It's totally irrelevant to the issue we're trying. We move for a mistrial.
"THE COURT: OVERRULED.
 "MR. HOLT: We move the Court to instruct the jury to disregard any such irrelevant, prejudicial testimony.
 "THE COURT: MOTION DENIED. It goes to a possible motive, ladies and gentlemen, and we receive it for that limited purpose." (R. 273, 274)
We note initially that specific objections are necessary to preserve error. Gibbs v. State, 342 So.2d 448 (Ala.Cr.App. 1977). Specific grounds of objection waive all grounds not specified, and the trial court will not be put in error on grounds not assigned. Hargrove v. State, 344 So.2d 823, 825
(Ala.Cr.App.), cert. denied, 344 So.2d 826 (Ala. 1977). The trial court must be apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the particular legal issues involved. Bland v.State, 395 So.2d 164, 168 (Ala.Cr.App. 1981). A trial court need not cast about for tenable grounds of an objection to evidence. Watkins v. State, 219 Ala. 254, 122 So. 610 (1929).
Here, there was no objection that the State was attempting to introduce evidence of a collateral offense as is alleged by the appellant. The appellant's objection was of a general nature. A close reading of the appellant's testimony reveals there was no evidence that a collateral offense had, in fact, been committed. If a trial court's ruling is correct for any reason, it will not be reversed because the court assigned the wrong reason therefor. Harnage v. State, 290 Ala. 142, 274 So.2d 352
(1972); Knox v. State, 365 So.2d 349 (Ala.Cr.App. 1978).
Furthermore, a negative response from a witness to questionsrelating to the accused's prior misconduct is harmless. Yatesv. State, 390 So.2d 32 (Ala.Cr.App. 1980). A negative answer to an improper question does not constitute reversible error.Scroggins v. State, 341 So.2d 967 (Ala.Cr.App. 1976), cert. denied, 341 So.2d 972 (Ala. 1977).
 IV
Appellant further argues that during her cross-examination, the prosecution made improper references to her daughter's juvenile record. We find no merit to this argument.
The appellant testified without objection that she and the deceased had had "arguments" or "difficulties" over her daughter after she found he had molested her and that "Terry had been in some trouble." (R. 278) The appellant then testified, over objection, that Terry's trouble concerned a petit larceny charge and that she (appellant) had herself charged Terry with being ungovernable. The trial court in overruling the objection informed the jury that the evidence was being received "for the limited purpose of showing an overall relationship between these parties . . . what they might have been arguing about, if they were arguing at all." (R. 279) No juvenile records of any sort were introduced into evidence. We find Ala. Code § 12-15-101 (1975) inapplicable to this discussion. *Page 975 
We note that later in the appellant's cross-examination, the following exchange occurred:
 "Q Mrs. Wyrick, there's been some talk — there's been some testimony here from you and from Terry about going to the juvenile office on the 12th of February, 1980, is that correct?
"A Yes.
"Q Did you go there with her?
"A I've gone with her most of the time.
"Q Ma'am?
 "A I've gone there with her most of the time. I don't know if I was with her that day or not.
 "Q Well, were you with her at the time that she reported to the juvenile authorities down there about her step-father molesting her?
"A I don't believe so.
"Q Ma'am?
 "A I don't believe so, but I come up there and told her." (R. 299)
This testimony came in without objection. This evidence plainly states that the appellant had gone with her daughter on more than one occasion to the juvenile authorities and for reasons other than the deceased's alleged molesting of her. The clear inference to be drawn from such testimony is that Terry had been "in some trouble" with the juvenile authorities.
We find, in addition, that Terry Wyrick had testified previously on her redirect examination by defense counsel that she had told the appellant "all the details" about the deceased molesting her. (R. 241) The appellant had, in turn, had Terry report the incidents to her juvenile probation officer, Susan Mitchell. Terry testified that the appellant wanted to prosecute the deceased, "but I didn't want her to." (R. 242)
Even if it is assumed that the prosecution's questioning of the appellant about her daughter's having been "in some trouble" with the juvenile authorities was illegal, we find no error. Where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment.Johnson v. State, 265 Ala. 360, 91 So.2d 476 (1956). If illegal evidence is introduced by one party and admitted, then the opponent has the right to introduce illegal evidence in rebuttal, even though the opponent failed to object to the initial introduction of illegal evidence. Johnson, supra.
Moreover, the appellant's testimony that she had gone with her daughter "most of the time" to the juvenile authorities, in response to questioning by defense counsel, cured any error which may have previously been committed by the prosecution. A defendant cannot complain of the admission of improper evidence where he himself testifies to the same facts. Romine v. State,384 So.2d 1185 (Ala.Cr.App.), cert. denied, 384 So.2d 1188
(Ala. 1980). Again, we find that the reception of the evidence to which the appellant objected was harmless. ARAP, Rule 45.
 V
No error occurred during the cross-examination of the appellant's character witnesses when they were asked if they had heard she shot her first or second husband. Each witness asked this question responded negatively. The question and answer came in without objection on at least four occasions. In addition, the trial court admonished the jury that the questionwas being asked to test the credibility of the characterwitness and not for the purpose of reflecting upon thecharacter of the appellant. See Pierce v. State, 228 Ala. 545,154 So. 526 (1934).
We have examined each issue raised by appellant. In addition, we have searched the record for errors prejudicial to appellant's substantial rights and have found none. The Circuit Court's judgment of conviction is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 976