This is an appeal from a judgment of conviction and sentence on a jury trial under an indictment which charged that defendant:
 ". . . did knowingly obtain or exert unauthorized control over one (1) navy blue sports jacket, the property of Castner Knott Dry Goods Company, Inc., a Corporation, of the value of $50.00, taken from or in a building where said property was stored or kept for sale, with the intent to deprive the owner of said property, in violation of Section 13A-8-4 of the Code of Alabama."
After the verdict and judgment finding and adjudging defendant guilty as charged and after defendant had been given due notice by the State that it would proceed against him under the Habitual Felony Offenders Act, a sentence hearing was conducted, at which hearing proof was made that defendant had been previously convicted of four felonies. The court sentenced defendant to imprisonment for forty years. Code of Alabama 1975, § 13A-8-4, the section of the Code that defendant is alleged in the indictment to have violated, provides that said crime "is a Class C felony." Section 13A-5-9 (c)(1), applicable to three or more felony convictions, provides:
 "On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;. . . ."
The first issue presented by appellant is as to whether the trial court erred in its denial of defendant's motion for a continuance. The case had been set for trial on September 1, 1982. When the case was called for trial on that date, the following occurred:
 "MR. KNIGHT [Defendant's attorney]: Your Honor, we would like to go on record with a motion to continue. *Page 705 
"THE COURT: Go ahead with your motion, please.
 "MR. KNIGHT: Your Honor, I was appointed on August 13, 1982, to represent the defendant in two felony cases. Today is September the 1st, 1982, and I simply have not had an opportunity to adequately prepare for what I feel the Constitution entitles the defendant to in the way of a defense. The same two weeks that I have had since being appointed has been preoccupied with my commitments to other courts, including this court, and I feel like I cannot adequately preserve the rights of the defendant.
"THE COURT: What says the State?
 "MR. MADISON [State's attorney]: State is here and ready, Your Honor.
 "THE COURT: What says the State in response to a motion for a continuance?
"MR. MADISON: We oppose it.
"THE COURT: Motion is denied.
 "MR. KNIGHT: We except to the Court's adverse ruling in regard to the motion to continue."
Thereupon, a jury was selected and the case was tried.
Immediately after the verdict and judgment of conviction and sentence, an appeal was taken, and defendant's appointed trial counsel was appointed to represent him on appeal and has filed a vigorous brief in appellant's behalf. He emphasizes the above-quoted excerpt from the court reporter's transcript in urging that the trial court should have conducted an "evidentiary hearing from which the trial court could have concluded that the appointed counsel had in fact been afforded sufficient opportunity to have become properly prepared to represent the Defendant during the trial of his cause." He argues that in the absence of an evidentiary hearing, the statement of defendant's counsel that he had not had an opportunity to adequately prepare for the trial should have been accepted by the court at face value and that this would have necessitated a favorable ruling on the motion for a continuance. In our opinion, this constitutes an oversimplification of the issue as to whether the trial court should be reversed for denial of the motion. It erroneously assumes that the only construction of the statement of defendant's counsel is that it was a statement of a fact as distinguished from a statement of opinion or conclusion of defendant's counsel, as to which there could be good reason for disagreement by the court and others. We have no doubt that defendant's counsel sincerely wished he had more "opportunity to adequately prepare," and we are confident that the trial court was of the same view. We cannot assume that at the time of the motion, the trial court was not acquainted with the nature of the case and a large part of the problems that would be presented during the trial of it. The record shows that the case had been pending in the trial court approximately ten months. The reporter's transcript shows that the only issue of fact in the case was as to the description and the value of the property allegedly stolen. The transcript also shows that by the handling of the case by defendant's attorney all of the witnesses for the State were thoroughly and intelligently cross-examined in such a way as to make their testimony as favorable to the defendant as possible. The transcript further shows that the defendant's testimony was presented in such a way as to have been as favorable to him as possible. There is nothing in the record proper or the transcript to indicate that defendant was not as well represented by his counsel on the trial as he would have been if he as counsel had had three or four months to prepare for the trial. Although it appears to us, prima facie, that the State, in not agreeing to a continuance, and the court, in overruling defendant's motion for a continuance, took considerable risk of a commission of error prejudicial to defendant, it also appears that probably the understanding of what was involved constituted reasonable assurance to them that there was no such risk. In our opinion, denial of defendant's motion for a continuance, when considered in the light of all the circumstances then existing, was well within the discretion of the trial court and was not erroneous. *Page 706 
As shown by numerous cases in Alabama, the determination of a motion for a continuance on the ground of lack of time for preparation by counsel is addressed to the sound discretion of the trial judge, whose decision will not be reversed except in cases of gross abuse of discretion. West's Ala. Digest, Criminal Law, Key Number 590 (2). Any noticeable difference in the results of the application of the principle over the past fifteen decades of its existence is largely by reason of different practical factors resulting from the mutations of time. During the past two decades, some criminal cases have been reversed for the denial of motions for a continuance on the ground of lack of time for preparation by counsel. We find no reversal for such reason in any case in which counsel had as much time for preparation as in the instant case. But for the next of only two issues raised by appellant, we would conclude that there was no injury to defendant by reason of defendant's counsel's not having more time to prepare for the trial. This leads us to a consideration of the remaining issue presented by appellant.
The other issue presented by appellant pertains to the action of the trial court during the redirect examination of the principal witness for the State, Mr. Wayne Powell, who was security manager of Castner Knott Drygoods Company, the victim of the alleged theft. He testified on direct examination in pertinent part as follows:
 "I was sitting on the cat walk. It was about 2:30. I was sitting on the side facing the Winn Dixie when I observed Charles Sales come in between linen department and our men's department. When he came in he got a bag, one of our shopping bags and a shopping cart, folded it up, put it under his shirt, walked to the men's department, took a navy blue blazer and went right back out of the store. ". . . .
 "Q. Can you tell us what the retail value of that jacket was, please?
"A. Ninety dollars.
"Q. Was that jacket worth at least fifty dollars?
"A. Yes, it was.
 "Q. All right. Now, going to the point you said you saw him originally come in and fold a bag and put it under his shirt — is that correct?
"A. Yes.
 "Q. Did he do anything with that bag when he got the jacket?
 "A. When he got the jacket he just walked out with the bag in his hand.
 "Q. All right. He kept the bag and he took the jacket out, too?
 "A. Yes, the bag was — the jacket was in the bag when he went out.
". . . .
 "Q. Did the defendant walk or run across the parking lot when he left the store?
 "A. He ran a short distance. His car was parked close by.
"Q. Was he walking or running though?
"A. Running.
"Q. Did he get in his car and leave?
"A. Yes."
During the cross-examination of Mr. Powell, he was questioned as to how close he was, while observing the defendant, to a control tower where he could activate one of nine cameras and thereby take a picture of the defendant. During that inquiry, the following questions were asked and answers given:
 "Q. And the controls to that video tape recorder are in this tower which is about fifteen feet away from where you were standing when the person came in the store to start with?
"A. Yes, sir.
 "Q. Now, when you saw that person come in the store, I guess you were suspicious the minute you saw him, weren't you?
"A. Well, when I saw him take — yes, sir, I was.
 "Q. The very minute he walked in the door you were suspicious? *Page 707 
 "A. Before he walked in the door, he had got the shopping bag.
"Q. Before he walked in the door?
 "A. Yes, sir. We have two sets of doors. We have the outer door, and you have the inner door, and when he walked through the door it is a little stand there with shopping bags, and you can put twenty-five cents in and get a shopping bag. That time when he came through he got the shopping bag.
 "Q. All right. As an experienced security man, you — when you see somebody getting a shopping bag (snapping fingers) you automatically watch him, don't you?
"A. No, sir.
 "Q. When they roll it up and put it under their coat or under their shirt, do you watch them?
"A. Yes, sir.
 "Q. At that point you started watching the person you testified having seen?
"A. Yes, sir.
". . . .
 "Q. The minute he got inside that vestible [which we construe as vestibule] from the outer door and got in the inner door and got inside the store area, you had seen him roll up a shopping bag and put it under his shirt, is that right?
"A. Yes, sir.
 "Q. How far from that point did you see him walk to the rack where the coat was?
"A. A hundred or a hundred and fifty feet.
". . . ."
The cross-examination continued for about twelve transcript pages, and then redirect examination was in progress about two pages when the following occurred on redirect examination:
 "Q. I believe Mr. Knight asked you before we broke for lunch — I believe his question was whether or not you suspected Charles Sales when he first came in the door. Do you recall him asking you that.
"A. Yes.
 "Q. All right. And I think your response was affirmative, that you did suspect him, is that correct also?
"A. Yes, sir.
"Q. Tell the jury what you based that suspicion on?
"MR. KNIGHT: We object to that, Your Honor.
"THE COURT: I think he is entitled to explain it.
 "Q. (By Mr. Madison): Mr. Knight asked the question. Now tell us what you based that suspicion on.
 "MR. KNIGHT: We object, Your Honor, on the basis that calls for irrelevant, illegal and incompetent prejudicial response.
 "THE COURT: I think that you have gone into it, and he has a right to explain it. I am going to let him answer.
"MR. KNIGHT: We except to the Court's adverse ruling.
 "A. I had reason to believe that he had prior — problems with the police and a lot of other merchants in the mall —
"MR. KNIGHT: We object and move for a mistrial.
"THE COURT: Overruled. Let him finish his answer.
 "MR. KNIGHT: Except to the Court's adverse ruling. Your Honor, we contend that we can't object to the questions if he is —
 "THE COURT: I have overruled your objection to the question. Let him answer the question.
"MR. KNIGHT: We except to the Court's adverse ruling.
 "A. A lot of the merchants in the mall know him, and whenever he is spotted we have a red alert that one merchant would pass around to the other one. And, like I said, I knew him from school, and I knew that he had been in and out of trouble, so that gave me probable cause to watch him. Not saying just because he had did anything before that he would do it again, but I figured, you know, that I had probable cause to watch him just to see what would happen. *Page 708 
 "MR. KNIGHT: Your Honor, at this time we object and move for a mistrial and state for the record that the witness has gone into obviously rehearsed and inflammatory matters. We submit that there is no way that had the prosecutor not have conferred with the witness that the prosecutor would have known what his answer was going to be to that broad question. We move for a mistrial.
"THE COURT: Motion is denied.
"MR. KNIGHT: We except to the Court's adverse ruling.
 "Q. (By Mr. Madison): Mr. Powell, have I ever before this particular occasion asked you that particular question?
"MR. KNIGHT: We object to that.
"THE COURT: Overruled.
 "Q. (By Mr. Madison): Have I ever asked you that question?
"A. No, you have not.
 "Q. All right. Can you tell the jury that there is no doubt in your mind that Charles Sales was the person you saw take that coat out?
"A. There is no doubt in my mind.
 "Q. You saw him from the moment he took it off the rack until the moment he left the store, is that right?
"A. That is correct.
"MR. MADISON: That is all.
"THE COURT: Anything further of this witness?
"MR. KNIGHT: We have nothing.
 "THE COURT: All right. I want to give you an instruction, ladies and gentlemen, as concerns a portion of this witness' testimony.
 "The witness was questioned and gave an answer as to why he was suspicious of the defendant when he came in the store. I allowed that only in response to a question on cross examination as to whether he was or whether he wasn't, and his explanation as to his motive, etc., is the only reason that answer is allowed. "If there is any implication by the witness' answer that he might have been involved in some other offense on some other occasion or some other time, that would be improper for you to consider that.
 "This defendant is on trial for one charge, one offense only, and that is the alleged theft of a blue blazer worth over fifty dollars.
 "Is there anybody on the jury that can't follow my instructions now and put the testimony out of their mind other than for the limited purpose I have allowed it in? If you can't follow the Court's instruction, hold up your hand.
 "All right. I am satisfied that you will treat it for the limited purpose I allowed it. Go ahead.
 "MR. KNIGHT: Your Honor, for the record we would like to renew our motion for a mistrial on the basis that the testimony was inirradicable [ineradicable].
"THE COURT: Overruled.
"MR. KNIGHT: We except.
"THE COURT: Go ahead. Come down."
Appellant contends there was an error in overruling defendant's objection as shown above to the questions asked Mr. Powell on redirect examination and in overruling defendant's motion for a mistrial by reason of the answers to such questions. The cardinal portion of appellee's countercontention is thus stated in appellee's brief:
 "The State's position is twofold: (1) the disputed testimony was properly received as a full explanation of his cross-examination testimony of why he was suspicious of the Appellant — a subject initiated by the Appellant and (2) if the testimony was improper, the judge's admonition, reproduced above, was quite adequate to cure any harm."
As to (1) of appellee's two-fold position, appellee states:
 "The State relies on the general proposition that: when one party inquires into a matter the other party should be allowed to go into the entire transaction and give evidence, if he can, which would tend to explain the detrimental effects of the initial proof. Ex Parte Bayne, 375 So.2d 1239 (Ala. 1979) quoting Brown v. State, 37 Ala. App. 595, 74 So.2d 521, cert. denied *Page 709 261 Ala. 696, 74 So.2d 524 (1954); accord, Wyrick v. State, 409 So.2d 969 (Ala.Cr.App. 1981), cert. denied, 409 So.2d 969 (Ala. 1982); Johnson v. State, 265 Ala. 360, 91 So.2d 476 (1956)."
In our opinion, the authorities cited do not support the contention that the testimony under consideration "was properly received." It did not "tend to explain" any "detrimental effects," of the testimony of the witness on direct examination that he was "suspicious of the defendant when he came in the store." Furthermore, the witness took it upon himself to go far beyond an explanation of his being suspicious of defendant when he came into the door. The witness used the opportunity presented to inject that which could have been reasonably understood as a habit that "whenever he [the defendant] is spotted" merchants and the witness "have a red alert that one merchant would pass around to the other one." The inquiry brought forth a barrage of testimony, which, in its very nature, is generally inadmissible for the sole purpose of suggesting that the accused is more likely to be guilty of the crime for which he is being tried. We have no doubt that the answer was sufficient to cause the jury to believe that the witness thought that defendant was guilty and that such belief was largely by reason of the facts that a "lot of the merchants in the mall know him, and whenever he was spotted we would have a red alert that one merchant would pass around to the other one . . . that he had been in and out of trouble." Neither on the trial nor on appeal do we find a contention by the prosecution that the evidence was admissible under any principal exception to the exclusionary rule. In the first part of appellee's "two-fold" position, appellee relies exclusively upon the claim that "appellant opened the door for the State's inquiry into the witness' suspicions," and entirely upon the authority of cited cases that hold, as appellee correctly states, that "when one party inquires into a matter the other party should be allowed to go into the entire transaction and give evidence, if he can, which would tend to explain thedetrimental effects of the initial proof." (Emphasis supplied.) The principle has found latest expression by Judge Tyson inWyrick v. State, Ala.Cr.App., 409 So.2d 969, 975, cert. denied,409 So.2d 969 (1982), as follows:
 "Even if it is assumed that the prosecution's questioning of the appellant about her daughter's having been `in some trouble' with the juvenile authorities was illegal, we find no error. Where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment. Johnson v. State, 265 Ala. 360, 91 So.2d 476 (1956). If illegal evidence is introduced by one party and admitted, then the opponent has the right to introduce illegal evidence in rebuttal, even though the opponent failed to object to the initial introduction of illegal evidence. Johnson, supra."
It is to be noted that the noun "detriment," or the adjective "detrimental," is in both of the quoted statements of the controlling principle. It is clear that the word "detriment" as used has reference to detriment to the party against whom the evidence as introduced, the State in the instant case. We look in vain for any such detriment. Whatever detriment there was, was detriment to the defendant, particularly in that part of the testimony of the witness to the effect that he was suspicious of defendant and watched him as he watches other persons entering the store when they get a shopping bag and "roll it up and put it under their coat or under their shirt." In our opinion, there was nothing helpful to defendant or detrimental to the State in the testimony of the witness on cross-examination by the defendant's attorney as to the witness' being suspicious of defendant when he first walked into the store. In our opinion, the trial court was in error in its ruling as shown by the following portion of the transcript:
 "Q. (By Mr. Madison): Mr. Knight asked the question. Now tell us what you based that suspicion on. *Page 710 
 "MR. KNIGHT: We object, Your Honor, on the basis that calls for the irrelevant, illegal and incompetent prejudicial response.
 "THE COURT: I think that you have gone into it, and he has a right to explain it. I am going to let him answer.
 "MR. KNIGHT: We except to the Court's adverse ruling."
We realize that there may be a trace of detriment to defendant in the testimony of Mr. Powell upon his being asked on cross-examination as to whether the witness was suspicious of defendant when defendant first walked in the door, which seems to be suggested by the following sentence in appellant's brief:
 ". . . The cross-examination questions seeking to elicit testimony regarding whether or not Mr. Powell was suspicious of the Defendant was surrounded by questions implying that the witness, Powell, had sufficient opportunity to activate video tape recording cameras in order to establish whether Defendant stole a blue blazer or a windbreaker."
The reference is to that part of the cross-examination of the witness that continued for several pages prior to the questions as to whether and when the witness became suspicious of the defendant. The particular part of the cross-examination was at a time when defendant's attorney, with no more information on the subject than that which he had learned from listening to the previous testimony in the case, would have known that the entrance to the store consisted of a large vestibule containing a door and doorway to the outside of the building and a door and doorway to the inside of the store (the place where goods were kept for sale). Having in mind that defendant's attorney had previously stated that he was not as well prepared as he would like to be for the trial of the case and requested a continuance, we can well understand his difficulty in cross-examining the witness as to that part of the store. The witness made it clear that from his position at the time he could well see the defendant while he was in the vestibule in which the defendant obtained a shopping bag and rolled it up and put it under his shirt. On the whole, the testimony of the witness on cross-examination as to the point was not detrimental to the State; it was detrimental to the defendant. The cross-examination as to this feature of the case was a boomerang. How much of the result is attributable to the fact that defendant's attorney did not have more time to prepare the case, we, of course, are unable to say.
We do not agree with appellee's position that the trial judge's "admonition" was quite adequate to cure any harm. We refer particularly to the following paragraphs of the "admonition":
 "If there is any implication by the witness' answer that he might have been involved in some other offense on some other occasion or at some other time, that would be improper for you to consider that.
 "This defendant is on trial for one charge, one offense only, and that is the alleged theft of a blue blazer worth over fifty dollars."
The testimony of the witness on redirect examination was more than an "implication" that defendant "might have been involved in some other offense on some other occasion or at some other time"; it was a positive declaration that "he had been in and out of trouble," which is the equivalent, we think, of testimony that he had "been involved in some other offense on some other occasion or at some other time." We doubt that the injury could have been eradicated by any other instruction, even one without the hypothesis contained in the instruction of the trial court, but even if it was eradicable it was not eradicated.
It should be kept in mind that at the time the defendant's attorney objected to the question we previously discussed on redirect examination, defendant and defendant's attorney had probably not decided whether the defendant would testify. There was nothing then in the record proper or in the transcript to indicate that defendant would probably take the stand. *Page 711 
When the State rested in the case, the defendant promptly took the stand. He was the only witness to testify in his behalf. He admitted in his testimony that he had stolen and taken an item from the store under circumstances narrated by witnesses for the State. However, he testified that the item stolen was a "white wind-breaker coat" with a "nylon-like fabric," with a price thereon of $19.22, that the item was not a "navy blue sports jacket . . . of the value of $50.00" as alleged in the indictment. In its oral charge to the jury, the court stated that under the evidence the jury could return only one of two verdicts, one finding the defendant guilty of theft in the second degree and the other guilty of theft in the third degree, and correctly made it clear to the jury that, if the property stolen exceeded twenty-five dollars in value, the defendant would be guilty of a felony of theft of property in the second degree but that, if it did not exceed twenty-five dollars in value, he would be guilty of the misdemeanor of theft of property in the third degree. It is beyond question that if the verdict and judgment had been for theft of property in the third degree, the Habitual Felony Offenders Act could not and would not have been applied and that instead of a sentence of imprisonment for forty years, defendant could not have received a sentence of imprisonment for more than one year.
We are unable to determine from our review of the transcript whether defendant would have taken the stand if Mr. Powell had not been allowed to testify as to his "reason to believe" that defendant "had prior — problems with the police and a lot of other merchants in the mall" and that defendant "had been in and out of trouble," et cetera. Furthermore, we cannot determine with reasonable certainty that the jury would have found defendant guilty of theft in the second degree or theft in the third degree in the absence of the testimony of Mr. Powell as to defendant's previous trouble. At any rate, we cannot say with absolute certainty that, in that circumstance, the jury would not have found defendant guilty of the lesser included offense, theft in the second degree. We are unable to say whether defendant's attorney would have asked Mr. Powell whether he was suspicious of the defendant when defendant "walked in the door" if defendant's counsel had had more time to prepare the case for trial, but we are confident that he will not do so in the event of another trial. We find it necessary to reverse the judgment of the trial court and remand the case for another trial, by reason of the error committed by the rulings as to the evidence elicited by the State in its redirect examination of the witness, Mr. Powell, as set forth above.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
TYSON, HARRIS and SAM TAYLOR, JJ., concur.
BOWEN, P.J., concurs in result only.
HUBERT TAYLOR, J., dissents. *Page 1018